UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**WENDELL SHANE MACKEY**,

      Plaintiff,

v.                                          Case No.

**JAMES MICHAEL BERRYMAN**,
Mayor of the City of Adrian, Michigan;
**MARGARET M.S. NOE**, Judge of the
Lenawee County Circuit Court,

      Defendants.

---

HADDAD LAW FIRM, PLC
By: Issa G. Haddad (P71699)
Attorney for Plaintiff
30600 Telegraph Road, Suite 4280
Bingham Farms, Michigan 48025-4550
(248) 633-8500

---

<div style="text-align:left; writing-mode:vertical">Haddad Law Firm, PLC.</div>

## <u>CIVIL RIGHTS COMPLAINT AND JURY DEMAND</u>

      NOW COMES Plaintiff, W. Shane Mackey, by and through counsel, Issa Haddad, and

for Plaintiff's Civil Rights Complaint and Jury Demand, states as follows:

      **A.**    <u>**Introduction**</u>

      1.    This action involves violations of Plaintiff's First and Fourteenth Amendment

rights to report news, to express political ideas, and to express criticism of public officials.  This

action further entails an egregious prior restraint on Plaintiff's First Amendment activities in a

thinly-veiled effort to silence political criticism and the expression of opposing political

viewpoints.

      2.    The present action is brought by Plaintiff Wendell Shane Mackey, who is

currently a candidate for City Commissioner of the City of Adrian, Michigan, and who is an

outspoken political critic of another local candidate, Defendant James M. Berryman, who is currently defending his seat as the incumbent Mayor of the City of Adrian.

3.       This action arose from the Mayor of the City of Adrian attempting to jail and ultimately succeeding in obtaining a Personal Protection Order against a political adversary in an effort to silence a vocal critic.

4.       This action further arose from a Lenawee County Circuit Court judge who ordered Plaintiff to refrain from posting any message on the internet for a period of one year merely weeks before the primary election scheduled for August 8, 2017.

5.       This egregious prior restraint of core political speech has prevented Plaintiff from publishing his political platform on his website www.shanemackeyforcitycommissioner.com, from publishing news articles regarding public issues of local concern on the blog ExposingAdrian.com, from criticizing the Mayor of the City of Adrian online, and from posting any other message on the internet until July 7, 2018.

## JURISDICTION

6.       This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1365; and 28 U.S.C. §§ 2201 – 2202.

## VENUE

7.       This Court has venue over this matter pursuant to 28 U.S.C. § 1391.

## PARTIES

8.       Plaintiff Wendell Shane Mackey is a resident of the City of Adrian, Michigan, who is currently a candidate on the primary election ballot for City Commissioner of the City of Adrian, Michigan.

*Haddad Law Firm, PLC.*

9.      Defendant James Michael Berryman is a resident of the City of Adrian, Michigan, and a lifelong Democrat who is currently defending his seat as the incumbent Mayor of the City of Adrian.  He is sued in his individual capacity as the Mayor of the City of Adrian.

10.     Defendant Margaret M.S. Noe is Judge sitting in the Lenawee County Circuit Court with a history of making campaign contributions to Democratic candidates.  She is sued in her official capacity solely for prospective injunctive relief in her judicial capacity.

## COMMON ALLEGATIONS

**B.      ExposingAdrian.com**

11.     On or about April 27, 2017, Plaintiff began publishing articles regarding public issues of local concern on ExposingAdrian.com.

12.     Understanding the local political milieu and fearing that local officials might retaliate against Plaintiff for publishing articles on ExposingAdrian.com, Plaintiff published the articles anonymously under the pseudonym robertm9.

13.     This website characterizes its contents as "[c]ritical analysis of local politics, policy, and socioeconomic issues."

14.     Some titles of the articles Plaintiff published on his blog include:

A.   "Adrian City Commission Places Its Decisions at Risk by Violating Open Meetings Act" (attached as **Exhibit A**)

B.   "City Officials Pillage Park Trust Fund to Pay Employee Wages and Benefits" (attached as **Exhibit B**)

C.   "Legislative Study on Poverty Finds Lenawee County One of 'Least Desirable' Counties in Michigan" (attached as **Exhibit C**)

Haddad Law Firm, PLC.

Haddad Law Firm, PLC.

D.  "Defendant Berryman Criticizes Predecessors for Hording Oil Revenues Then Does the Same" (attached as **Exhibit D**)

E.  "Why Berryman's Adrian College Property Give-Away is Illegal" (attached as **Exhibit E**)

F.  "Berryman's Political Cronies Make over $20,000 from City's Website Pop-Up Ad" (attached as **Exhibit F**)

G.  "Mayor and Entire City Commission are All from Affluent 4th Precinct" (attached as **Exhibit G**)

H.  "Berryman Blocks Us on Twitter and Then Offers Lies to Defend Corruption" (attached as **Exhibit H**)

I.  "The Truth about the Biergarten: Berryman Attempts another Backroom Deal, Commission Rightfully Shuts Him Down" (attached as **Exhibit I**)

15.    These articles are relatively well-researched, typically supported by public records, and consist of political analysis and commentary of public issues of local concern.

16.    in an effort to promote the article, Plaintiff would post links to these articles on the Twitter account @Exposing_Adrian[1] and the Facebook account @exposingadrian.[2]

17.    Defendant Berryman and other city officials began to suspect that Plaintiff was in fact robertm9.

**C.    The Letter to the Editor**

18.    On May 20, 2017, a local newspaper, The Daily Telegram, published a Letter to the Editor written by Plaintiff in which Plaintiff criticized the City Commission for ratifying a

---

[1]  https://twitter.com/Exposing_Adrian
[2]  https://www.facebook.com/exposingadrian/

backroom deal brokered by Defendant Berryman in such a manner as to circumvent the local City Commission political process.  See, Letter to the Editor (attached as **Exhibit J**).

19.     Defendant Berryman's conduct was so inappropriate that other local political officials publicly chastised Defendant Berryman's improper attempt to circumvent the local City Commission political process.  See, Memorandum dated May 11, 2017 (attached as **Exhibit K**); The Daily Telegram, Land Sold for Hotel Project: Adrian City Commission Transfers Purchase Option to Developer, Sells Land for $1 (May 16, 2017), p A7 (attached as **Exhibit L**).

20.     Consequently, Plaintiff penned a letter to the editor of The Daily Telegram, criticizing City Commissioners for approving the backroom deal and failing to hold Defendant Berryman accountable for his inappropriate actions that smacked of political corruption.

21.     In this letter, Plaintiff suggested that the timing of Defendant Berryman's secret backroom deal "smacks of fraud, corruption and kickbacks."  Plaintiff concluded his letter with the rallying cry that Defendant Berryman "and his sycophantic 'yes men' on the city commission must go during this November's election."  See, Letter to the Editor (attached as **Exhibit J**).

**D.     The Exchange at the June 19, 2017, City Commission Meeting**

22.     During the June 19, 2017, City Commission meeting, Defendant Berryman attempted to pass a motion on behalf of investors, who are also his friends and/or acquaintances.

23.     Just as Plaintiff previously criticized local officials for violating Michigan's Open Meetings Act, see Electronic Mail to City Attorney dated April 24, 2017 (attached as **Exhibit M**), Plaintiff spoke out against the motion because the motion was not on the City Commission agenda and thus failed to provide members of the community the notice to which they were entitled.

- 5 -

24.     Plaintiff also spoke out against the motion on the basis that the same friends and/or acquaintances of Defendant Berryman were recent recipients of approximately $5 million in taxpayer money so they could engage in "historical preservation" of two buildings merely yards away from an historic building that they now sought to destroy in the name of "modernizing" the city, which contradicted Defendant Berryman's prior claims that historical preservation of historic buildings was paramount in the downtown area.  See, The Daily Telegram, Biergarten off the Table: As Adrian City Commission Votes to Delay, Group Pulls Its Offer (June 20, 2017), p A1 (attached as **Exhibit N**).

25.     Ultimately, Defendant Berryman's attempt to pass the motion failed, and after heated debate among Commissioners and the public, Defendant Berryman's friends and/or acquaintances withdrew their offer to develop the property due to "the political circus this has turned into." *Id*.

26.     Defendant Berryman was visibly disappointed and upset by this defeat and his failure to pass the motion for this friend / acquaintance investors.

27.     During the public comment segment at the end of the City Commission meeting, Plaintiff spoke out against the "hidden agenda" that was clearly in play at the meeting.

28.     Defendant Berryman interrupted Plaintiff, and in an attempt to publicly humiliate and discredit Plaintiff's candidacy, Defendant Berryman rudely interjected and asked whether Plaintiff was the same person who had "robbed [Defendant Berryman's] flower shop back in 1986?"

29.     The question was perceived as so inappropriate by spectators that at least one candidate for City Commissioner audibly gasped in shock that Defendant Berryman would make

Haddad Law Firm, PLC.

such an inappropriate personal attack against Plaintiff during a public City Commission

proceeding.

30.     In response to Defendant Berryman's highly irrelevant and inappropriate

question, Plaintiff conceded that he was in fact the individual who Defendant Berryman believed

him to be.  Plaintiff then explained how Defendant Berryman, who at the time of the incident

was the 39-year-old Mayor of Adrian, had egregiously abused his political power by ensuring

that Plaintiff, who was at the time a 19-year-old teenager, received the greatest penalty possible

under Michigan law for a relatively minor property offense.

31.     Defendant Berryman attempted to interrupt Plaintiff to prevent him from speaking

further, but Plaintiff continued to share how Defendant Berryman's political corruption was the

very impetus behind Plaintiff's decision to attend law school and to toss his hat into the local

political arena.

32.     After Plaintiff finished speaking and departed from the lectern, a candidate for

City Commissioner approached the lectern and stated that Defendant Berryman owed Plaintiff an

apology for Defendant Berryman's inappropriate personal attack.  In response, spectators who

attended the meeting began to applaud.

33.     After the City Commission meeting ended, several spectators approached

Plaintiff, including city officials and other political candidates, and offered expressions of

disbelief, empathy, and support.

34.     At no time did anyone, including the Adrian Chief of Police who was present at

the meeting, suggest that Plaintiff's response was hostile or threatening.

35.     At no time did anyone, including the Adrian Chief of Police who was present at

the meeting, suggest that Plaintiff leave the meeting for inappropriate conduct.

36.     At least one political candidate subsequently opined that Defendant Berryman was "the aggressor" towards Plaintiff, and every political candidate who has spoken to Plaintiff regarding the incident has uniformly expressed that Plaintiff handled the situation "very well."

37.     At no time before, during, or after the June 19, 2017, did Defendant Berryman request that Plaintiff cease communicating with him.

**E.     <u>Attempt to Jail Plaintiff for Political Criticism</u>**

38.     Immediately after the June 19, 2017, City Commission meeting, Defendant Berryman filed a complaint with the City of Adrian Chief of Police, seeking to have Plaintiff arrested and jailed for responding to Defendant Berryman's personal attack in a manner that angered Defendant Berryman.

39.     Immediately after the City Commission meeting, Defendant Berryman reported the interaction to the Chief of Police, seeking to have Plaintiff arrested, jailed, and prosecuted for criticizing him.

40.     The Chief of Police parsed the audio recording of the City Commission meeting and informed Defendant Berryman that Plaintiff had not threatened him.

41.     Defendant Berryman then reported to the Chief of Police that he felt threatened by (a) my "looks and gesturing," (b) my Letter to the Editor published on May 20, 2017, and (c) by nonspecific posts on unspecified social media.

42.     The Chief of Police closed the case on the basis that Plaintiff had not violated Michigan Compiled Laws, M.C.L. 750.411h, M.C.L. 750.411i, and/or M.C.L. 750.411s.

43.     At no time before, during, or after Defendant Berryman's report to the Chief of Police did Defendant Berryman request that Plaintiff cease communicating with him.

**F.     The Exchange at the July 3, 2017, City Commission Meeting**

44.     During the June 19, 2017, City Commission meeting, a large number of city employees attended the meeting to address the City Commission regarding a concern.

45.     Defendant Berryman engaged in such lengthy debate several times that it caused the meeting to continue for hours, and it prevented the city employees from being heard at the meeting.

46.     Concerned that such a large group of people were denied the right to be heard, Plaintiff addressed this matter during the following July 3, 2017, City Commission meeting.

47.     During the public comment segment of the July 3, 2017, Plaintiff read short excerpts from Section 43 and Section 47 of the Robert's Rules of Order Newly Revised into the record and pointed out that the impartiality requirement imposed upon the chair of the Presiding Officer precludes debating from the chair.  Plaintiff further pointed out that Robert's Rules of Order Newly Revised precluded members of the Commission from engaging in debate on a particular matter more than twice during a session.

48.     Plaintiff noted that the procedure that occurred during the June 19, 2017, City Commission meeting violated these provisions and undermined the integrity of the impartiality requirement imposed upon the Presiding Officer of the City Commission.  Plaintiff further expressed concern that because of these violations of fundamental parliamentary procedure numerous city employees who attended the meeting left the meeting without being heard.

49.     Defendant Berryman became visibly upset at Plaintiff and responded by claiming that the City Charter allowed him to disregard to the Robert's Rules of Order despite having

claimed merely seconds before that City Committee meetings are governed by Robert's Rule of Order.

50.     Defendant Berryman further claimed that he and the City Attorney (who was not present at the meeting) had previously discussed the matter and that the City Attorney opined that Defendant Berryman could debate from the chair as the Presiding Officer despite the longstanding and well-established prohibition of such conduct.

51.     At no time before, during, or after the July 3, 2017, did Defendant Berryman request that Plaintiff cease communicating with him.

**G.      The July 5, 2017, Electronic Mail to the City Attorney**

52.     Two days later, on July 5, 2017, Plaintiff sent an electronic mail message to the City Attorney, expressing concern regarding Defendant Berryman's claim that the City Attorney had allegedly approved of Defendant Berryman's violation of fundamental tenets of parliamentary procedure.  See, Electronic Mail to City Attorney dated July 5, 2017 (attached as **Exhibit O**).

53.     In an effort to avoid a claim that Plaintiff had engaged in inappropriate *ex parte* communication with the City Attorney without notice to Defendant Berryman and to better articulate his concerns to his local elected representatives, when Plaintiff dispatched this electronic mail message to the City Attorney, he caused a copy of the electronic mail message to be dispatched to every City Commissioner, including Defendant Berryman, at their respective official City of Adrian email address.  *Id.*

54.     Defendant Berryman was chagrined by Plaintiff's electronic mail because many City Commissioners look to Defendant Berryman as the de facto parliamentarian, and Plaintiff's

Haddad Law Firm, PLC.

electronic mail message revealed to the City Commission Defendant Berryman's lack of knowledge regarding fundamental tenants of parliamentary procedure.

55.     At no time before, during, or after Plaintiff sent his July 5, 2017, electronic mail message did Defendant Berryman request that Plaintiff cease communicating with him.

**H.      The July 6, 2017, Personal Protection Order**

56.     The following day, July 6, 2017, Defendant Berryman filed a Petition for Personal Protection Order, seeking an *ex parte* Personal Protection Order against Plaintiff based upon Plaintiff's news reporting on matters of local public concern and Plaintiff's core political expressions critical of local government officials.

57.     In support of his Petition, Defendant Berryman claimed that he needed a Personal Protection Order against Plaintiff because:

A.  Thirty-two years ago, Plaintiff was convicted of breaking and entering in February of 1986 and sentenced to prison;

B.  Plaintiff had written a letter to the editor of the local newspaper that was published by the local newspaper on May 20, 2017, in which Plaintiff "made accusations of fraud, corruption & kickbacks, etc";

C.  During the June 19, 2017, City Commission meeting, Defendant Berryman confronted Plaintiff about breaking into Defendant Berryman's business 32 years ago, and in response, Plaintiff went into a "rant" with which Defendant Berryman disagreed;

D.  Plaintiff "continues to post false accusations on social media not only against [Defendant Berryman] but, false statements of private citizens that are friends

- 11 -

Haddad Law Firm, PLC.

of [Defendant Berryman] – using their pictures and copies of their signatures
without their permission";

E.   Plaintiff sent an electronic mail message on July 5, 2017, to the City Attorney,
expressing concern regarding Defendant Berryman's refusal to adhere to
parliamentary procedure;

F.   Plaintiff's "use of social media & emails & public encounters are escalating in
frequency & hostile tone"; and

G.   Plaintiff "clearly blames [Defendant Berryman] for [Plaintiff's] incarceration
in 1986 & carries those misguided feelings to this date."

58.   At no time before Defendant Berryman filed his Petition did Defendant Berryman
request that Plaintiff cease communicating with him.

59.   Defendant Berryman fraudulently concealed and failed to disclose in his Petition:

A.   That duing the 32-year intrim, Plaintiff has become an upstanding member of
the community, having earned a baccalaureate (B.A.) degree *summa cum
laude* from Eastern Michigan University, a Juris Doctorate (J.D.) degree *cum
laude* from the University of the District of Columbia law school, and nearing
completion of a Master's in Business Administration (MBA) with a
concentration in Finance at Eastern Michigan University.  Plaintiff is
successfully self-employed, a local real estate investor, landlord, and a
valuable contributing member of the local community;

B.   That Plaintiff's letter to the editor did not in any way threaten Defendant
Berryman but, instead, merely contained political speech regarding Defendant

Haddad Law Firm, PLC.

Berryman's backroom dealings that Defendant Berryman did not like and which angered Defendant Berryman;

C.   That during the June 19, 2017, City Commission meeting, Plaintiff accused Defendant Berryman of abusing the judicial process to exact revenge upon Plaintiff.  Plaintiff did not say anything even remotely similar to a threat, and the Chief of police refused to press charges because Mr. Mackey had engaged in no wrongdoing;

D.   That the "false accusations on social media" alleged by Defendant Berryman were neither false nor were posted on social media; rather, they were news articles supported by public records that were posted on the privately-registered domain name ExposingAdrian.com;

E.   That Plaintiff's electronic mail message on July 5, 2017, to the City Attorney, contained wholly appropriate concerns regarding Defendant Berryman's refusal to adhere to parliamentary procedure, and Defendant Berryman never once indicated to Plaintiff that Defendant Berryman did not want Plaintiff to contact him as the Mayor of Adrian;

F.   That Plaintiff's "use of social media & emails & public encounters" had not escalated "in frequency & hostile tone," and to the extent that they had, it was solely in the context of Plaintiff, as a candidate for City Commission, criticizing Defendant Berryman, as the incumbent candidate for Mayor;

G.   That Plaintiff never once mentioned anything about the unfortunate incident occurring 32 years ago during 1986 until Defendant Berryman verbally attacked Plaintiff during the June 19, 2017, City Commission meeting.  Nor

- 13 -

did Defendant Berryman reveal that After he had verbally attacked Plaintiff

during this City Commission meeting another candidate for City Commission

indicated that Defendant Berryman owed Plaintiff an apology for Defendant

Berryman's crude and unnecessary verbal attack on Plaintiff, a comment that

drew applause from spectators.

60.     The following day, July 7, 2017, Defendant Noe issued a Personal Protection

Order *ex parte* without giving Plaintiff any notice or opportunity to be heard.

61.     Defendant Noe's *ex parte* Personal Protection Order constitutes a prior restraint

and is therefore cloaked in a heavy presumption of unconstitutionality.

62.     Pursuant to the terms of Defendant Noe's *ex parte* Personal Protection Order,

Plaintiff may not:

    A.  Participate in City Commission meetings;

    B.  Participate in Downtown Development Authority meetings;

    C.  Visit city hall;

    D.  Approach or confront Defendant Berryman even in Plaintiff's capacity as
        candidate for City Commissioner and Defendant Berryman's capacity as
        Mayor of Adrian;

    E.  Send electronic mails or other communications to Defendant Berryman even
        in Plaintiff's capacity as candidate for City Commissioner and Defendant
        Berryman's capacity as Mayor of Adrian;

    F.  Post a message through the use of any medium of communication, including
        the Internet or a computer or any electronic medium, and including writing
        articles of public concern on ExposingAdrian.com.

Haddad Law Firm, PLC.

63.    The basis for Defendant Noe's refusal to provide Plaintiff with any pre-deprivation notice and opportunity to be heard is that "irreparable injury, loss, or damage will result from delay required to give notice or notice itself will precipitate adverse action before an order can be issued."

64.    Defendant Noe issued the Personal Protection Order on the basis that Plaintiff had violated Michigan Compiled Laws, M.C.L. 750.411h, M.C.L. 750.411i, and/or M.C.L. 750.411s despite the fact that the Chief of Police had already determined that Plaintiff had not violated these statutes.

65.    Defendant Noe issued the Personal Protection Order either without reading Defendant Berryman's Petition or without requiring that Defendant Berryman's Petition comply with mandatory pleading specificity requirements.

66.    Defendant Noe issued the Personal Protection Order based upon conclusions contained in Defendant Berryman's Petition despite Plaintiff having a state-created liberty interest in not having a Personal Protection Order granted against him *ex parte* without first receiving adequate notice and an opportunity to be heard absent a written Petition filed against him that "state[s] *with particularity* the facts on which it is based."

67.    Defendant Noe issued the Personal Protection Order against Plaintiff *ex parte* without first providing Plaintiff adequate notice and an opportunity to be heard despite Plaintiff having a state-created liberty interest in not having such a Personal Protection Order granted against him absent "*specific facts* shown by verified complaint, written petition, or affidavit …."

68.    Defendant Noe issued the Personal Protection Order against Plaintiff *ex parte* without first providing Plaintiff adequate notice and an opportunity to be heard despite Plaintiff

Haddad Law Firm, PLC.

having a state-created liberty interest in not having such a Personal Protection Order granted

against him absent Defendant Noe "stat[ing] in writing the *specific reasons*" why immediate and

irreparable injury, loss, or damage will result from the delay required to effectuate notice or that

the notice will itself precipitate adverse action before a personal protection order can be issued.

69.     Defendant Noe, a contributor to Democratic candidates, knew or reasonably

should have known that there was no basis in law that could support issuing a Personal

Protection Order *ex parte* on behalf of Defendant Berryman, a Democratic candidate, against

Plaintiff for wholly political activity that lies at the core of the First Amendment.

70.     Defendant Noe, a contributor to Democratic candidates, issued a Personal

Protection Order *ex parte* on behalf of Defendant Berryman, a Democratic candidate, against

Plaintiff in an effort to silence Plaintiff's criticism of Defendant Berryman and to provide

Defendant Berryman a competitive advantage in the local election.

**G.     The July 8, 2017, Electronic Mail to the City Attorney**

71.     The following day, July 8, 2017, Plaintiff sent an electronic mail message to the

City Attorney and Chief of Police, providing them with Plaintiff's political itinerary, asking that

they please advise Defendant Berryman regarding Plaintiff's political itinerary so that there was

no contact between Plaintiff and Defendant Berryman, and apprising them that Plaintiff would

immediately contact 911 in the event that Defendant Berryman appeared in the same vicinity as

Plaintiff.

72.     Plaintiff explained that the reason he was sending the electronic mail message was

that Defendant Berryman "has chosen to abuse the legal process for political reasons and secure

a Personal Protection Order against me to silence debate and stifle opposing viewpoints" and that

Plaintiff "d[id] not believe that [Defendant Berryman]  should be able to capitalize upon the

Haddad Law Firm, PLC.

situation by excluding me from political campaign related activities, which is the real reason he secured this absurd Personal Protection Order against me in the first place."

73.     No one replied to Plaintiff's electronic mail message or otherwise requested that Plaintiff cease communicating with them.

**H.     The July 18, 2017, NAACP Candidate's Forum**

74.     Before each City of Adrian election, the local branch of the NAACP holds a Candidate's Forum, which is hosted at the Siena Heights University in Adrian, Michigan.

75.     Audio of the Candidate's Forum is broadcast live on the local radio station WLEN, and video of the Candidate's Forum is posted on the local newspaper's Facebook account www.facebook.com/thedailytelegram/

76.     The purpose of the Candidate's Forum is to provide local political candidates an opportunity to express their political positions and platforms to members of the local community, so voters can make an informed choice regarding the candidate for whom they vote.

77.     In a commendable effort to allow Mr. Mackey to be heard, the NAACP brokered an agreement between Plaintiff and Defendant Berryman, whereby Defendant Berryman agreed that he would not appear during the first half of the Candidate's Forum so that Plaintiff could be given an opportunity to be heard and present his political positions and platform to the local community.  After Plaintiff had been given this opportunity, Plaintiff agreed that he would then leave the Candidate's Forum so that Defendant Berryman could be given an opportunity to be heard and present his political positions and platform to the local community.

78.     A few days later, on July 17, 2017, the evening prior to the Candidate's Forum, Defendant Berryman gave a statement to a local radio station WLEN, claiming that Plaintiff "still has a vendetta today focused on me 32 years later saying that it's my fault that he went to

prison" and that "[i]n today's world, that's a little scary." Defendant Berryman further stated that for Plaintiff "to be focused on me for 32 years, blaming me for his imprisonment, is a little unnerving."

79.     Approximately 3 hours before the Candidate's Forum was scheduled to being, Defendant Berryman's attorney telephoned Plaintiff's attorney, claiming that Plaintiff was already in "direct violation" of the Personal Protection Order for sending the City of Adrian Attorney the electronic mail containing Plaintiff's political itinerary in an attempt to avoid contact with Mr. Berryman.

80.     Defendant Berryman's attorney further indicated in his voicemail that if Plaintiff "confronted, approached, or followed" Defendant Berryman then Defendant Berryman would report Plaintiff to the police for violating the Personal Protection Order.

81.     Plaintiff has never "confronted, approached, or followed" Defendant Berryman in person except in response to Defendant Berryman's personal attacks on Plaintiff.

82.     Defendant Berryman now claimed that he "prefers not to have any contact" with Plaintiff although despite having no problem initiating the confrontation with Plaintiff during the June 19, 2017, City Commission meeting.

83.     Plaintiff arrived at the Candidate's Forum at the Siena Heights University shortly after 6:30 p.m. Shortly after arriving, Defendant Berryman arrived at the Candidate's Forum in complete violation of the representations that he had made to NAACP representatives.

84.     Intercessors requested Defendant Berryman to remain outside of the building and in his vehicle until after Plaintiff had been given an opportunity to speak at the Candidate's Forum, but Defendant Berryman refused to do so and insisted on entering the room where Plaintiff was already seated and prepared to speak.

85.     Because of Defendant Berryman's breach of agreement and refusal to remain outside of the building and in his vehicle until after Plaintiff had been given an opportunity to speak at the Candidate's Forum, Plaintiff was forced to leave the room that was already filled with hundreds of people prepared to hear City Commissioner candidates speak.

86.     Because of Defendant Berryman's breach of agreement and refusal to remain outside of the building and in his vehicle until after Plaintiff had been given an opportunity to speak at the Candidate's Forum, Plaintiff was denied the opportunity to speak at the Candidate's Forum, which is the very purpose that Defendant Berryman sought when he wrongfully obtained the Personal Protection Order against Plaintiff.

87.     Other candidates at the forum expressed concern that Plaintiff had been denied the opportunity to share his political views and platform during the Candidate's Forum.

88.     Defendant Berryman's insistence on repeatedly confronting Plaintiff confirms that Defendant Berryman did not obtain the Personal Protection Order against Plaintiff because he fears Plaintiff may harm him physically but because he fears Plaintiff may harm him politically.

## LEGAL CLAIMS

### COUNT I: 42 U.S.C. 1983
### VIOLATION OF FIRST AMENDMENT – RETALIATION

89.     Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

90.     At all times relevant to this Complaint, Defendants acted in their respective official capacities under color of state law.

91.     Plaintiff engaged in protected conduct, including but not limited to:

A.  News gathering;

B.  News reporting;

C.  Reporting issues of public concern;

- 19 -

D.  Commenting upon issues of public concern;

E.  Opining upon issues of public concern;

F.  Reporting stories regarding public officials;

G.  Commenting upon public officials and their polticial platforms and policies;

H.  Opining about public officials and their polticial platforms and policies; and

I.  Engaging in all of the aforementioned activities under the protection of anonymity for fear of retaliation by local officials.

92.     Defendants took adverse action against Plaintiff that would deter a person of ordinary firmness from continuing to engage in said protected conduct, including but not limited to:

A.  Attempting to have Plaintiff criminally prosecuted for activities that are wholly-protected by the First Amendment;

B.  Falsly claiming on the local news that Plaintiff "still has a vendetta today focused on [Defendant Berryman] 32 years later saying that it's [Defendant Berryman's] fault that [Plaintiff] went to prison";

C.  Falsly claiming on the local news that Plaintiff was "focused on [Defendant Berryman] for 32 years" and "blaming [Defendant Berryman] for his imprisonment";

D.  Falsly claiming on the local news that Defendant Berryman was unnerved and scared of Plaintiff when it was Defendant Berryman who verbally attacked Plaintiff during the June 19, 2017, City Commission meeting;

E.  Petitioning Defendant Noe for a Personal Protection Order based upon fraud, misrepresentation, and nondisclosure of material facts;

Haddad Law Firm, PLC.

F.   Obtaining from Defendant Noe a Personal Protection Order for the purpose of silencing ciritcism of public officials and stifling poltical debate;

G.   Issuing a Personal Protection Order either without reading Defendant Berryman's Petition or without requiring that Defendant Berryman's Petition set forth its allegations with specificity;

H.   Issuing a Personal Protection Order ex parte without providing Plaintiff first pre-deprivation notice and an opportunity to be heard absent a written Petition filed against Plaintiff "stat[ing] *with particularity the facts* on which it is based";

I.   Issuing a Personal Protection Order against Plaintiff *ex parte* without first providing Plaintiff adequate notice and an opportunity to be heard absent "*specific facts* shown by verified complaint, written petition, or affidavit" why immediate and irreparable injury, loss, or damage would result from the delay required to effectuate notice or that the notice would itself precipitate adverse action before a personal protection order can be issued;

J.   Issuing a Personal Protection Order against Plaintiff *ex parte* without first providing Plaintiff adequate notice and an opportunity to be heard absent Defendant Noe "stat[ing] in writing the *specific reasons*" why immediate and irreparable injury, loss, or damage would result from the delay required to effectuate notice or that the notice would itself precipitate adverse action before a personal protection order can be issued;

K.   Issuing a Personal Protection Order against Plaintiff in retaliation for Plaintiff's political activity and political expression;

Haddad Law Firm, PLC.

L.   Issuing a Personal Protection Order against Plaintiff in an effort to silence Plaintiff's criticism of Defendant Berryman and to provide Defendant Berryman a competitive advantage in the local election; and

M.   Issuing a Personal Protection Order against Plaintiff in an effort to advance Defendant Berryman's political campaign based upon a mutuality of political interest shared by Defendant Berryman and Defendant Noe.

93.     Defendants' conduct deprived Plaintiff of his constitutional rights.

94.     There is a causal connection between the adverse action taken by Defendants which was motivated at least in part by Plaintiff's protected conduct.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not limited to compensatory, special, consequential, and punitive damages), to enter a declaratory judgment declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights, and awarding Plaintiff any other relief to which it may appear he is entitled.

### COUNT II: 42 U.S.C. 1983
### VIOLATION OF 14TH AMENDMENT
### PROCEDURAL DUE PROCESS

95.     Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

96.     At all times relevant to this Complaint, Defendants acted in their respective official capacities under color of state law.

97.     Plaintiff had a liberty or property interest requiring protection under the Due Process Clause, including but not limited to:

A.   News gathering;

Haddad Law Firm, PLC.

B.  News reporting;

C.  Reporting issues of public concern;

D.  Commenting upon issues of public concern;

E.  Opining upon issues of public concern;

F.  Reporting stories regarding public officials;

G.  Commenting upon public officials and their poltical platforms and policies;

H.  Opining about public officials and their poltical platforms and policies; and

I.  Engaging in all of the aforementioned activities under the protection of anonymity for fear of retaliation by local officials;

J.  Not having a Personal Protection Order entered against Plaintoiff *ex parte* without Defendant Noe first reading Defendant Berryman's Petition or requiring that Defendant Berryman's Petition "state *with particularity the facts* on which it is based";

K.  Not having a Personal Protection Order entered against Plaintiff *ex parte* without first providing Plaintiff adequate notice and an opportunity to be heard absent "*specific facts* shown by verified complaint, written petition, or affidavit" why immediate and irreparable injury, loss, or damage would result from the delay required to effectuate notice or that the notice would itself precipitate adverse action before a personal protection order can be issued;

L.  Not having a Personal Protection Order entered against Plaintiff *ex parte* without first providing Plaintiff adequate notice and an opportunity to be heard absent Defendant Noe "stat[ing] in writing the *specific reasons*" why immediate and irreparable injury, loss, or damage would result from the delay

Haddad Law Firm, PLC.

required to effectuate notice or that the notice would itself precipitate adverse

action before a personal protection order can be issued;

M.  Not having a Personal Protection Order entered against Plaintiff in retaliation

for political activity and political expression;

N.  Not having a Personal Protection Order entered against Plaintiff to silence

Plaintiff's criticism of Defendant Berryman and to provide Defendant

Berryman a competitive advantage in the local election; and

O.  Not having a Personal Protection Order entered against Plaintiff to advance

Defendant Berryman's political campaign.

98.    Defendants deprived Plaintiff of these interests.

99.    The deprivation of these interests occurred without adequate process.

100.    A pre-deprivation hearing was not unduly burdensome in proportion to the

protected liberty or property interests at stake.

101.    Defendants feasibly could provide a pre-deprivation hearing before they deprived

Plaintiff of his liberty or property interests.

102.    Defendants actions were not random or unauthorized.

103.    Defendants could have anticipated and prevented a random deprivation of the

protected liberty or property interests at stake.

104.    Defendants' conduct caused Plaintiff's damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment

awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not

limited to compensatory, special, consequential, and punitive damages), to enter a declaratory

judgment declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter

injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's

constitutional rights, and awarding Plaintiff any other relief to which it may appear he is entitled.

### COUNT III: 42 U.S.C. 1983
### VIOLATION OF 14TH AMENDMENT
### SUBSTANTIVE DUE PROCESS

105.    Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

106.    At all times relevant to this Complaint, Defendants acted in their respective

official capacities under color of state law.

107.    Plaintiff had a liberty or property interest requiring protection under the Due

Process Clause, including but not limited to:

A.  News gathering;

B.  News reporting;

C.  Reporting issues of public concern;

D.  Commenting upon issues of public concern;

E.  Opining upon issues of public concern;

F.  Reporting stories regarding public officials;

G.  Commenting upon public officials and their polticial platforms and policies;

H.  Opining about public officials and their polticial platforms and policies; and

I.  Engaging in all of the aforementioned activities under the protection of

anonymity for fear of retaliation by local officials;

108.    Defendants' conduct deprived Plaintiff of these fundamental particular

constitutional guarantees.

109.    Defendants' conduct shocks the conscience.

110.    Defendants' conduct caused Plaintiff's damages.

Haddad Law Firm, PLC.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not limited to compensatory, special, consequential, and punitive damages), to enter a declaratory judgment declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights, and awarding Plaintiff any other relief to which it may appear he is entitled.

### COUNT IV: 42 U.S.C. 1983
### VIOLATION OF FOURTEENTH AMENDMENT
### EQUAL PROTECTION – CLASS OF ONE

111.    Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

112.    At all times relevant to this Complaint, Defendants acted in their respective official capacities under color of state law.

113.    Defendants intentionally treated Plaintiff differently from others similarly situated.

114.    There was no rational basis for the difference in treatment that Plaintiff received at the hands of Defendants.

115.    Defendants' conduct deprived Plaintiff of his constitutional rights.

116.    Defendants' conduct caused Plaintiff's damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not limited to compensatory, special, consequential, and punitive damages), to enter a declaratory judgement declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights, and awarding Plaintiff and other relief to which it may appear he is entitled.

## COUNT V: 42 U.S.C. 1985
## <u>CONSPIRACY TO VIOLATE CIVIL RIGHTS</u>

117.     Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

118.     Defendants entered into a conspiracy.

119.     Defendants entered into said conspiracy for the purpose of depriving Plaintiff, either directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws

120.     Defendants participated in an act in furtherance of this conspiracy by securing a Personal Protection Order against Plaintiff.

121.     As a result of Defendants' conduct, Plaintiff has been injured or deprived of rights or privileges of a citizen of the United States.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not limited to compensatory, special, consequential, and punitive damages), to enter a declaratory judgement declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights, and awarding Plaintiff and other relief to which it may appear he is entitled.

## <u>SUPPLEMENTARY STATE LAW CLAIMS</u>

## COUNT VI:
## <u>ABUSE OF PROCESS</u>

122.     Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

123.     Defendants acted with an ulterior purpose.

124.     Defendants used legal process which was improper in the regular prosecution of the proceeding.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not limited to compensatory, special, consequential, and exemplary damages), to enter a declaratory judgement declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights, and awarding Plaintiff and other relief to which it may appear he is entitled.

## COUNT VII:
## CIVIL CONSPIRACY

125.    Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

126.    Defendants engaged in concerted action by a combination of two or more persons.

127.    Defendants engaged in said action to accomplish an unlawful purpose.

128.    Defendants engaged in said action to accomplish a lawful purpose by unlawful means.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not limited to compensatory, special, consequential, and exemplary damages), to enter a declaratory judgement declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights, and awarding Plaintiff and other relief to which it may appear he is entitled.

## COUNT VIII:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

129.    Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

130.    Defendants have engaged in extreme and outrageous conduct.

131.    Defendants engaged in said conduct intentionally or recklessly.

Haddad Law Firm, PLC.

132.    Defendants conduct caused Plaintiff harm in the form of severe emotional distress.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not limited to compensatory, special, consequential, and exemplary damages), to enter a declaratory judgement declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights, and awarding Plaintiff and other relief to which it may appear he is entitled.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages in an amount to be determined by a jury (including but not limited to compensatory, special, consequential, and exemplary damages), to enter a declaratory judgement declaring that Defendants' conduct violated Plaintiff's constitutional rights, to enter injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights, and awarding Plaintiff and other relief to which it may appear he is entitled.

Respectfully submitted,

_____

HADDAD LAW FIRM, PLC
By:  Issa G. Haddad (P71699)
      Attorney for Respondent
      30600 Telegraph Road, Suite 4280
      Bingham Farms, Michigan 48025-4550
Dated: July 20, 2017                (248) 633-8500

Haddad Law Firm, PLC.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

<div style="margin-left:40%;">

Respectfully submitted,

_____

HADDAD LAW FIRM, PLC
By: Issa G. Haddad (P71699)
Attorney for Respondent
30600 Telegraph Road, Suite 4280
Bingham Farms, Michigan 48025-4550
(248) 633-8500

</div>

Dated: July 20, 2017

Haddad Law Firm, PLC.