UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDELL SHANE MACKEY,

               Plaintiff,               CA: 17-12359

-vs-                               HON. BERNARD A. FRIEDMAN

                                   MAG. DAVID R. GRAND

JAMES MICHAEL BERRYMAN,
Mayor of the City of Adrian, Michigan;
MARGARET M.S. NOE, Judge of the
Lenawee County Circuit Court,

               Defendants.

_____ /

| | |
|---|---|
| HADDAD LAW FIRM, PLC | ROSATI SCHULTZ JOPPICH |
| Issa Haddad (P71699) | & AMTSBUECHLER PC |
| Attorney for Plaintiff | By: Holly S. Battersby (P72023) |
| 30600 Telegraph Rd., Ste. 3150 | Attorney for Defendant Noe |
| Bingham Farms, MI 48025-4550 | 27555 Executive Drive, Ste. 250 |
| (248) 633-8500 | Farmington Hills, MI 48331 |
| issa@haddlaw.com | (248) 489-4100 |
| | hbattersby@rsjalaw.com |

GARAN LUCOW MILLER, P.C.
John J. Gillooly (P41948)
Anthony Monticciolo (P76013)
Attorneys for Defendant Berryman
1155 Brewery Park Blvd., Ste. 200
Detroit, MI 48207-2641
(313) 446-5501
jgillooly@garanlucow.com
amonticciolo@garanlucow.com

_____ /

## DEFENDANT JUDGE MARGARET NOE'S MOTION FOR SUMMARY JUDGMENT

Defendant Noe, through her attorneys, ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C., brings this motion pursuant to FRCP 12(b)(6)/FRCP 56, and relies upon the attached brief and exhibits.

Defendant requested, but was not able to obtain, concurrence in the relief sought herein from Plaintiff's counsel on August 23, 2018, November 28, 2018 and November 29, 2018 necessitating the filing of this Motion.

WHEREFORE, Defendant Noe respectfully requests that this Court grant her Motion for Summary Judgment and dismiss all of the claims against her, in their entirety, with prejudice, and grant sanctions against Plaintiff and/or his attorneys for filing this frivolous action, as well as costs and attorney fees so wrongfully incurred in defending this action and any other relief the Court deems appropriate.

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/ Holly S. Battersby_____
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
Attorney for Judge Margaret Noe
hbattersby@rsjalaw.com
(P72023)

DATED:  December 13, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDELL SHANE MACKEY,

    Plaintiff,

-vs-

JAMES   MICHAEL   BERRYMAN,
Mayor of the City of Adrian, Michigan;
MARGARET M.S. NOE, Judge of the
Lenawee County Circuit Court,

    Defendants.

_____ /

CA: 17-12359
HON. BERNARD A. FRIEDMAN
MAG. DAVID R. GRAND

HADDAD LAW FIRM, PLC
Issa Haddad (P71699)
Attorney for Plaintiff
30600 Telegraph Rd., Ste. 3150
Bingham Farms, MI  48025-4550
(248) 633-8500
issa@haddlaw.com

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC
By:  Holly S. Battersby  (P72023)
Attorney for Defendant Noe
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331
(248) 489-4100
hbattersby@rsjalaw.com

GARAN LUCOW MILLER, P.C.
John J. Gillooly  (P41948)
Anthony Monticciolo (P76013)
Attorneys for Defendant Berryman
1155 Brewery Park Blvd., Ste. 200
Detroit, MI  48207-2641
(313) 446-5501
jgillooly@garanlucow.com
amonticciolo@garanlucow.com

_____ /

## BRIEF IN SUPPORT OF DEFENDANT JUDGE MARGARET NOE'S MOTION FOR SUMMARY JUDGMENT

# <u>INDEX OF AUTHORITIES</u>

## <u>Cases</u>

*Allen v. McCurry*, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)..............18

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)....................... 14, 15

*Ashelman v. Pope*, 793 F.2d 1072 (9th Cir.1986).....................................................8

*Bolin v. Story*, 225 F.3d 1234 (11th Cir.2000) .......................................................12

*Bradley v. Fisher*, 80 U.S. 335 (1871).....................................................................8

*Bright v. Gallia Cnty.*, 753 F.3d 639 (6th Cir.2014) ...............................................13

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)..........................................15

*Cole v Granville*, 448 F 3d 853 (6th Cir, 2006)......................................................18

*Diehl v. Danuloff*, 242 Mich. App. 120, 128 (2000)  ...................................... 22, 23

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462,
   S. Ct. 1303, 75 L. Ed. 2d 206 (1983)........................................................... 16, 17

*Fieger v. Thomas*, 74 F.3d 740 (6th Cir.1996) .......................................................20

*Forrester v. White,* 484 U.S. 219 (1988) ...............................................................7, 8

*Goode v Muhammad*, No. 18-10314 2018 WL 705153 (E.D. Mich. 2018)............19

*Hale v. Harney*, 786 F.2d 688 (5th Cir. 1986)........................................................17

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982);...........................................................8

*Juidice v. Vail*, 430 U.S. 327 (1977)......................................................................19

*Keene Corp.v. Cass*, 908 F.2d 293 (8th Cir. 1990) ................................................17

*Kelm v. Hyatt*, 44 F.3d 415 (6th Cir. 1995) .............................................................19

*Kipen v. Lawson*, 57 Fed.Appx. 691 (6th Cir. 2003)..................................................12

*Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439
   (E.D. Mich. 2006) ................................................................................. 10, 11, 12

*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990) .........................15

*McCarthy v. Sosnick*, No. 293482, 2011 WL 4424344, at *6
(Mich. Ct. App. Sept. 22, 2011) ...............................................................................23

*Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982)..............................................................................................18

*Mireles v. Waco*, 502 U.S. 9 (1991)( ....................................................................7, 8

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...........................................................7, 8

*Mosley v. Hairston*, 920 F.2d 409 (6th Cir. 1990)...................................................15

*Pennzoil Co v Texaco, Inc.,* 481 U.S. 1 (1987) ......................................................16

*Pickering v. Pickering*, 253 Mich. App. 694 (2002). .............................................20

*Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458 (6th Cir. 2003) .....................16

*Pierson v. Ray*, 386 U.S. 547 (1967) .......................................................................7

*Preiser v. Newkirk*, 422 U.S. 395 (1975)................................................................14

*Pulliam v. Allen*, 466 U.S. 522 (1984)......................................................................9

*Rooker v Fidelity Trust Co.,* 263 U.S. 413 (1923);.................................... 16, 17, 18

*Ross v. Consumers Power Co.* (On Rehearing), 420 Mich. 567, 592 (1984) ) ......22

*Serven v. Health Quest Chiropractic, Inc.*, 319 Mich. 245, 253 (2017) ...............22

*Spruytte v. Owens*, 190 Mich. App. 127, 130 (1991) .............................................22

*Stump v. Sparkman*, 435 U.S. 356 (1978)................................................................8, 9

*Sun Refining & Marketing Company v. Brennan*, 921 F.2d 635
   (6th Cir.1990)................................................................................19

*Tindall v. Wayne County Friend of the Cour*t, 269 F.3d 533 (6th Cir. 2001) ........19

*Underhill v. Royer*, No. 14-CV-14768, 2015 WL 2384052, at *2 n.4
   (E.D. Mich. May 19, 2015)..........................................................13

*Whittaker v. Geyer*, No. 2:18-CV-11472, 2018 WL 3839396, at *2
   (E.D. Mich. Aug. 13, 2018) ........................................................12

*Worldwide Church of God v. McNair*, 805 F.2d 888 (9th Cir. 1986) ....................17

*Younger v. Harris*, 401 U.S. 37 (1971)............................................................ 18, 19

## Statutes

42 U.S.C. § 1983 ........................................................................ 10, 11

MCL 600. 2950a(12)....................................................................20

MCL 691.1407(5) ................................................................... 22, 23

## Other Authorities

Black's Law Dictionary, 10th ed.  2015 ..........................................10

Federal Courts Improvement Act of 1996 ("FCIA"),
   Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996)................9

U.S. Const., Art. III, § 2.....................................................................14

## Rules

LR 7.1(e)(1)(B) and (C) ..................................................................14

# ISSUES PRESENTED

**I.   WHETHER JUDGE NOE IS ENTITLED TO ABSOLUTE JUDICIAL IMMUNITY FROM PLAINTIFF'S SUIT?**

> Plaintiff says, "No."
> Defendant says, "Yes."

**II.   WHETHER THE INJUNCTIVE RELIEF PLAINTIFF SEEKS WILL BE RENDERED MOOT BY JUDGE NOE'S IMMINENT RETIREMENT?**

> Plaintiff says, "No."
> Defendant says, "Yes."

**III.   WHETHER ABSTENTION DOCTRINES PRECLUDE THIS COURT FROM GRANTING THE RELIEF PLAINTIFF SEEKS?**

> Plaintiff says, "No."
> Defendant says, "Yes."

**IV.   WHETHER THE EX PARTE PPO IN THIS MATTER WAS PROPERLY GRANTED BY JUDGE NOE?**

> Plaintiff says, "No."
> Defendant says, "Yes."

**V.   WHETHER PLAINTIFF'S STATE LAW CLAIMS AGAINST JUDGE NOE ARE BARRED BY ABSOLUTE JUDICIAL IMMUNITY?**

> Plaintiff says, "No."
> Defendant says "Yes."

**STATEMENT OF FACTS**

This case arises out of an ex parte Personal Protection Order ("PPO") that Defendant James Berryman, then Mayor of the City of Adrian, filed against Plaintiff Wendell Shane Mackey on July 6, 2017.  By way of brief overview, Plaintiff committed a felony against Defendant Berryman approximately 30 years ago, when he robbed the flower shop that Defendant Berryman owned.  (Ex. A – Judgment).  Plaintiff had at least one other felony pending at this time and was sentenced to serve 6 years and 6 months to 10 years in prison related to these crimes.  (Ex. B – Judgement of Sentence / Commitment to Jail; Ex. C – Arraignment Transcript).

Plaintiff appeared at a June 19, 2017 Adrian City Commission Meeting and spoke during public comment.  (Ex. D – Meeting Audio).  After his comment, Defendant Berryman asked Plaintiff if he was the same man that robbed his flower shop in 1986.  *Id.*  at 50 secs.  Plaintiff stated that he was and accused Defendant Berryman of being responsible for putting him in prison and conspiring with the presiding judge to impose a harsh sentence upon Plaintiff.  *Id.* at 1:05, 1:40. Plaintiff called Defendant Berryman a "corrupt, dirty politician," and threatened that he was going to "be a thorn in [Berryman's] side," and would not "go away." *Id.* at 1:58.

1

Defendant Berryman was disturbed by this comment and spoke to Police Chief Vince Emerick after the Council Meeting, requesting that he generate a police report regarding the incident.  (Ex. E – Police Report).  Defendant Berryman expressed to Chief Emerick that he felt "threatened" by Plaintiff, especially given the looks and gestures Plaintiff was giving him during the comment.  *Id.* pp. 3. Defendant Berryman also mentioned threatening behavior which Plaintiff exhibited before the Commission Meeting to Chief Emerick that night.  *Id.* at 3.

On July 6, 2018, Plaintiff filed a Petition for PPO in the Lenawee County Circuit Court.  (Ex. F – PPO Petition & Supporting Docs).  Specifically, in his Petition, Defendant Berryman indicated that Plaintiff was stalking him, as defined by MCL 750.411h and MCL 750.411i by: "following me or appearing within my sight; appearing at my workplace or residence; approaching or confronting me in a public place or on private property; entering onto or remaining on property owned, leased or occupied by me; sending mail or other communications to me; contact me by telephone; [and] placing an object on or delivering an object to property owned, leased or occupied by me."  *Id.*  Defendant Berryman additionally explained his reason for seeking a PPO:

> While attending a city Commission Meeting (June 19, 2017) I asked him if he was the same Wendell Shane Mackey that broke into my store in 1986?  He responded, yes!  Then went into a rant that it was because off me that he went to prison, made an accusation that Judge Glaser, Jr. and I went into a backroom and conspired to send him to prison.  He continued to rant that I was at fault for his incarceration,

2

such that I filed a Police Report with Adrian Chief Vince Emerick . . . .

*Id.* Defendant Berryman further relayed that Plaintiff was posting "false accusations on social media" about Defendant Berryman and his friends.  *Id.* According to Defendant Berryman, Plaintiff was also using pictures and copies of signatures of Defendant Berryman's friends, without their permission.  *Id.* Defendant Berryman additionally stated that Plaintiff's "use of social media and emails and public encounters are escalating in frequency and hostile tone."  *Id.* Finally, Defendant Berryman explained, "Wendell Shane Mackey clearly blames me for his incarceration in 1996 and carries those misguided feeling [sic] to this date."  *Id.*  Defendant Berryman attached to his PPO application: the felony complaint pertaining to Plaintiff's larceny of Defendant Berryman's flower shop; Plaintiff's guilty plea to felony breaking and entering related to that event; Plaintiff's Judgment of Sentence, stating his prison term of 6 ½ to 10 years; Plaintiff's arraignment transcript related to his felony charges; and various emails and postings authored by Plaintiff.

The Petition was assigned to Circuit Court Judge Margaret Noe for review and, on July 7, 2018, she granted the ex parte PPO based on the information included in Defendant Berryman's Petition and supporting documents.  (Ex. G – Order Granting Ex Parte PPO).  Judge Noe found that the ex parte PPO should be "entered without notice because irreparable injury, loss, or damage will result from

3

delay required to give not or notice itself will precipitate adverse action before an order can be issued." *Id.* Judge Noe also noted that, based on Defendant Berryman's Petition for PPO, Plaintiff had engaged in "escalating antagonistic aggression against [Berryman]; criminal history ([Berryman] – victim) use of media to harass [Berryman]." *Id.*

Plaintiff filed a Motion to Set Aside the Ex Parte PPO, which was set for hearing before Judge Noe on July 26, 2017. (Ex. H – Noe PPO Hrg Transcript). By that time, Plaintiff had already instituted this civil rights action, and requested that Judge Noe recuse herself from further participation in this matter. *Id.* at 5, 9-11. Counsel for Defendant Berryman expressed that he viewed the lawsuit against Judge Noe as merely an attempt by Plaintiff to "forum shop," so that another judge would be assigned to hear the Motion to Set Aside the PPO. *Id.* at 11. Judge Noe reminded Plaintiff's counsel that her recusal would undoubtedly result in delay of a decision on the pending Motion and Plaintiff's attorney indicated that he understood. *Id.* at 13. Judge Noe granted Plaintiff's request that she recuse herself and the case was assigned to Washtenaw County Circuit Court Judge Patrick Conlin, Jr. *Id.* at 14; Ex. I - Notice of Hearing.

Judge Conlin commenced the hearing on Plaintiff's Motion to Set Aside the Ex Parte PPO on August 28, 2018. (Ex. J – PPO Hrg Transcript Covers). Two more days of testimony were take on September 19 and October 10, 2017. *Id.* On

October 10, 2017, Judge Conlin denied Plaintiff's Motion to Set Aside the PPO

and made minor modification to the terms of the Order.  (Ex. K – Conlin Ruling,

pp. 90-97).  Specifically, Judge Conlin stated:

> I do find that there's cause to maintain the personal protection order. I
> am, however, going to modify it . . . .  I think that gets to a reasonable
> person question in whether or not [Berryman] personally felt
> threatened based on other actions.
>
> However, **I do believe that the June 18th [sic], I think is the date of
> the public meeting, whereby Mr. Mackey identified that Mr.
> Berryman was the reason, along with Judge Glaser, that he went
> to prison, and even subsequent in the commentary, that, "I will
> remain a thorn in your side," I've already told you that that was
> the most concerning thing that I heard in terms of the statements
> made; and that, to me, I do believe was something that a
> reasonable person could feel threatened by.**  Moving forward in a
> timeline, there were two other instances that caused me concern.
> While I would agree, Mr. Mackey, that the e-mail from July 3rd was
> tedious in its analysis of Robert's Rules of Order, I do, in my review
> of that e-mail, would note that all of the criticism about the
> misappropriation or misuse of the parliamentary procedure was
> identified as Mr. Berryman's fault. So I do also feel that in conjunction
> with the statements at the meeting from June 18th, that that e-mail
> would continue or perpetuate Mayor Berryman's concern about
> personal matters being transcended from the political stage. So I do
> think that also is a further indication close in time that there was
> behavior that Mr. Berryman could have felt threatened by. . . .
>
> [T]he content of that July 8th e-mail is actually more concerning to
> me than the content of the July 3rd e-mail. But taken in conjunction
> with the statements made on June 18th, **I do find that Mr. Berryman
> has a legitimate cause for concern.  So based on those instances, I
> am maintaining the personal protection order**.

*Id.* at 90-92 (emphasis added).  Plaintiff subsequently appealed Judge Conlin's ruling to the Michigan Court of Appeals on October 31, 2017, where the matter remains pending.  (Ex. L – Register of Actions, Michigan Court of Appeals).

Plaintiff filed this lawsuit during the pendency of his Motion to Set Aside the Ex Parte PPO, raising the following claims against Judge Noe pursuant to 42 USC §1983: First Amendment Retaliation; 14th Amendment Procedural Due Process Violation; 14th Amendment Substantive Due Process Violation; 14th Amendment Equal Protection Violation; and Conspiracy to Violate Plaintiff's Civil Rights.  Dkt #1.  Plaintiff further asserts claims of Abuse of Process, Conspiracy and Intentional Infliction of Emotional Distress against the Judge under state law.   Dkt #1. Plaintiff's Complaint repeatedly states that he is seeking monetary damages from Judge Noe.  His pleadings additionally vaguely reference a request "declaratory judgment declaring that Defendants' conduct violated Plaintiff's constitutional rights" as well as "injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights."  Dkt #1, pp. 22, 24, 26-29.

As discussed more thoroughly below, each claim is barred by absolute judicial immunity afforded by state and federal law, the injunctive relief Plaintiff seeks against Judge Noe is moot and abstention doctrines preclude this federal action.

## LEGAL ARGUMENT

### I.   JUDGE NOE IS ENTITLED TO ABSOLUTE JUDICIAL IMMUNITY FROM PLAINTIFF'S SUIT.

6

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967).  The Supreme Court has articulated the purpose of affording absolute immunity to judicial officers:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.

*Id.* at 554; *See also Forrester v. White,* 484 U.S. 219, 226–27(1988)("[t]he resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.... Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability").

Courts have made resoundingly clear that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991)(citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The immunity afforded judges is so broad, in fact, that it can be overcome in only two circumstances: 1) where a judge engages in actions taken outside of her judicial

capacity; and 2) where a judge acts "in the complete absence of all jurisdiction." *Id.* at 11-12; *See also Forrester v. White*, 484 U.S., at 227-229 (1988); *Stump v. Sparkman*, 435 U.S., at 356-360 (1978). The U.S. Supreme Court has further held that even a plaintiff's allegations of bad faith or malice are insufficient to overcome qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 815-819 (1982); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"); *Mireles*, 502 U.S. at 288–89 (judge was immune even where he allegedly authorized police officers to use excessive force to bring an attorney into his courtroom); *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir.1986) (extending absolute judicial immunity to a judge who allegedly conspired with a prosecutor to predetermine the outcome of a proceeding).

Further, as early as 1871, the Court has recognized that even where a judge erroneously exercises his or her jurisdiction, this does not affect "the validity of the act" or make it "any less a judicial act," nor does it "render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever . . . ." *Bradley v. Fisher*, 80 U.S. 335, 357 (1871). The Court reaffirmed this principle a century later in *Stump v. Starkman*, holding, "[a]judge is absolutely immune from liability for his judicial

acts **even if his exercise of authority is flawed by the commission of grave procedural errors**." *Stump*, 435 U.S. at 359 (emphasis added).

Here, it is undisputed that Judge Noe was acting within her judicial capacity and within her jurisdiction in ruling upon the ex parte PPO filed by Defendant Berryman. There is no question that she is entitled to absolute judicial immunity from all of Plaintiff's claims against her, which stem solely from her decision to grant the ex parte PPO.

Plaintiff attempts to circumvent the clear judicial immunity afforded to Judge Noe by claiming that he because he is seeking solely prospective injunctive relief against the Judge, the traditional judicial immunity principles do not apply. This contention is belied by both Plaintiff's pleadings and the enactment of the Federal Courts Improvement Act of 1996 ("FCIA"), Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996). First, Plaintiff's pleadings make abundantly clear that he is seeking monetary relief from Judge Noe, stating in each of the Counts pertaining to Judge Noe, "Plaintiff respectfully requests this Honorable Court to enter a judgment awarding Plaintiff monetary damages . . . ." (Dkt #1, pp.22, 24, 26-29). Second, Plaintiff relies primarily upon *Pulliam v. Allen*, 466 U.S. 522 (1984) for the contention that absolute judicial immunity does not bar a plaintiff's request for prospective injunctive relief. Plaintiff ignores the fact that *Pulliam* was decided before the FCIA amended 42 U.S.C. § 1983 in 1996 to state

that "... **in any action brought against a judicial officer** for an act or omission taken in such officer's judicial capacity, **injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable**." 42 U.S.C. § 1983 (amended Oct. 19, 1996 by Pub.L. 104–317, Title III, § 309(c), 110 Stat. 3853).

Black's Law Dictionary defines a "declaratory decree" by referencing "declaratory judgment." (Ex. M – Black's Law Dictionary, 10th ed.  2015).  A "declaratory judgment" is "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." *Id.*   This Court considered the very argument that Plaintiff raises in this case in the published decision of *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 446 (E.D. Mich. 2006).   The plaintiff in *Kircher* contended that absolute judicial immunity only applied to lawsuits claiming monetary damages and that his claims were not subject to dismissal because he was seeking equitable relief, just as Plaintiff argues here.  Like Plaintiff in this case, the *Kircher* plaintiff argued that *Pulliam* supported his assertion that injunctive relief is not barred by absolute judicial immunity.  The *Kircher* Court rejected Plaintiff's argument, explaining:

> Plaintiff's argument, however, overlooks an amendment to § 1983 that was enacted fully ten years ago, and which expressly precludes the award of injunctive relief he seeks against the Judicial Defendants in this case.
>
> ***

10

> This argument would be a good deal more persuasive if not for a 1996 amendment to 42 U.S.C. § 1983 that abrogated the portion of *Pulliam* upon which Plaintiff seeks to rely. Following this amendment, the statute now provides in pertinent part that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, ***injunctive relief shall not be granted*** unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (emphasis added); *see also Bolin v. Story,* 225 F.3d 1234, 1242 (11th Cir.2000) (recognizing that *Pulliam* "has been partially abrogated" as a result of this 1996 amendment). Plaintiff has not alleged that the Judicial Defendants violated a declaratory decree or that declaratory relief was unavailable at any relevant time. Accordingly, his request for an order directing the Judicial Defendants to follow the law does not overcome their immunity from the present suit brought under § 1983. *See Massey v. Stosberg,* No. 04–5344, 136 Fed.Appx. 719, 720 (6th Cir. Feb.8, 2005); *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999)

*Id.* at 446, 448 (emphasis in original).  This Court should reach the same holding.

As in *Kircher*, Plaintiff here has not alleged that a declaratory decree was violated or that declaratory relief was unavailable at any relevant time.  If anything, Plaintiff concedes the availability of a declaratory decree by requesting "a declaratory judgment declaring that Defendants' conduct violated Plaintiff's constitutional rights," in this litigation.  Dkt #1, pp. 22, 24, 26-29.  Given that Plaintiff cannot establish that "a declaratory decree was violated, or declaratory relief was unavailable," 42 USC § 1983 expressly instructs that "injunctive relief shall not be granted" as to Judge Noe.

This Court again considered the issue of whether absolute judicial immunity bars claims for injunctive relief very recently in *Whittaker v. Geyer*, No. 2:18-CV-

11472, 2018 WL 3839396, at *2 (E.D. Mich. Aug. 13, 2018)(Ex. N).   As this

Court again explained, injunctive or equitable relief are barred by absolute judicial

immunity:

> Moreover, the 1996 amendments to § 1983 extended absolute
> immunity for state judicial personnel to requests for injunctive or
> equitable relief. See 42 U.S.C. § 1983 ("[I]n any action brought
> against a judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief is unavailable.").
> *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 446–47 (E.D. Mich.
> 2006).

Consequently, this Court held that Wayne County Circuit Court Judge Patricia

Fresard was immune from Plaintiff's request for injunctive relief.   *See also Kipen*

*v. Lawson*, 57 Fed.Appx. 691 (6th Cir. 2003)(absolute immunity has also been

extended to requests for injunctive relief)(citing *Bolin v. Story*, 225 F.3d 1234,

1240-42 (11th Cir.2000)).

Furthermore, as Magistrate Judge Grand also recently noted in ruling upon

Defendant Noe's Motion for Stay:

> In light of the FCIA's enactment, Mackey's assertion in recent
> briefing that, "it is very well-settled that judges do not enjoy absolute
> immunity from suits seeking nonmonetary remedies such [as]
> declaratory or injunctive relief" (Doc. #26 at 20) is incorrect:

>> Although common law judicial immunity extended only
>> to suits for money damages, see *Pulliam v. Allen*, 466
>> U.S. 522, 541-43 [] (1984), Congress expanded the scope
>> of that immunity by enacting the [FCIA]. *Gilbert v.*
>> *Ferry*, 401 F.3d 411, 414 n. 1 (6th Cir. 2005). The FCIA
>> amended 42 U.S.C.§ 1983 to provide that, "in any action

12

> brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." As a result of this amendment, 42 U.S.C. § 1983 now "explicitly immunizes judicial officers against suits for injunctive relief." Roth v. King, 449 F.3d 1272, 1286 (D.C. Cir. 2006)] . . .

> *Underhill v. Royer*, No. 14-CV-14768, 2015 WL 2384052, at *2 n.4 (E.D. Mich. May 19, 2015), aff'd (May 12, 2016). *See also Texas Brine Co., LLC v. American Arbitration Assoc., Inc.*, No. CV 18-6610, 2018 WL 5773064, at *4 (E.D. La. Nov. 2, 2018) ("The Pulliam decision was statutorily overruled as to 1983 claims in 1996 by the [FCIA] . . .").

Dkt #29, pp. 2, fn 1.  This Court's decision in *Underhill v. Royer*, No. 14-CV-14768, 2015 WL 2384052, at *2 n.4 (E.D. Mich. May 19, 2015)(Ex. O), aff'd (May 12, 2016), as cited by the Magistrate Judge, makes clear that Plaintiff's claim must be dismissed as a matter of law.

Even if Plaintiff disagrees with Judge Noe's ruling on Defendant Berryman's ex parte Motion for PPO, his recourse is to address any errors he believes she made through appellate review.  *Bright v. Gallia Cnty.*, 753 F.3d 639, 649 (6th Cir.2014) ("In general, litigants can protect themselves from judicial errors through the appellate process or other judicial proceedings without resort to suits for personal liability...").  Plaintiff has, in fact, availed himself of the right to appeal the propriety of the PPO.  Following Judge Conlin's decision upholding Defendant Noe's granting of the PPO, with minor modification, Plaintiff filed an

13

appeal of his ruling in the Michigan Court of Appeals, where the matter remains pending.  (Ex. L – Docket).  This is the appropriate remedy for any impropriety Plaintiff alleges exists with regard to the issuance of the PPO, and not a §1983 action against Judge Noe, as Plaintiff has asserted here.

## II.   THE INJUNCTIVE RELIEF PLAINTIFF SEEKS WILL BE RENDERED MOOT BY JUDGE NOE'S IMMINENT RETIREMENT.

Plaintiff seeks injunctive relief in the form of "enjoining [Judge Noe] from engaging in any further violation of Plaintiff's constitutional rights."  Dkt #1, pp. 22, 24. 26-29.  Judge Noe has announced her retirement and will be leaving the bench on January 2, 2019.  (Ex. P – Retirement Article).  Plaintiff's Response to this dispositive Motion is due on January 2, 2019.  LR 7.1(e)(1)(B).  Defendant's Reply would then be due on January 16, 2019.  LR 7.1(e)(1)(C).  Judge Noe will no longer be on the bench by the time this Court renders its decision on her Motion for Summary Judgment.   Article III of the Constitution limits federal-court jurisdiction to "cases" and "controversies." U.S. Const., Art. III, § 2.  The Supreme Court has interpreted this requirement to mean that there must be "an actual controversy ... extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401(1975)).

"If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990); *See also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), as revised (Feb. 9, 2016); *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990)(case may be moot where "defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated").  Here, there will be no actual "case" or "controversy" or "reasonable expectation" that any alleged "wrong" committed by Judge Noe "will be repeated" at the time this Court renders its Opinion as to this dispositive motion.  *Arizonans for Official English, Mosley, supra.*  Quite simply Plaintiff no longer has a "personal stake" as it pertains to his request for injunctive relief as to Judge Noe's judicial activities because she will no longer be on the bench.  *Lewis*, *supra.* Consequently, "the action can no longer proceed" against Judge Noe and "must be dismissed as moot" as a matter of law.

## III.  ABSTENTION DOCTRINES PRECLUDE THIS COURT FROM GRANTING THE RELIEF PLAINTIFF SEEKS.

As Magistrate Judge Grand noted in his Opinion regarding Defendant Noe's Motion to Stay:

> A plaintiff "cannot use § 1983 as a device to obtain collateral review of state court judgments." *West v. Jones*, No. 1:14-CV-02298-VEH, 2015 WL 2450538, at *5 (N.D. Ala. May 22, 2015). Thus, he "cannot obtain declaratory or injunctive relief under § 1983 if he had an adequate remedy at law, including appellate review in the state courts

15

> with respect to an allegedly improper judicial ruling." *Id.* The foregoing raises serious questions about Mackey's claims against Noe in this case.

Dkt #29, pp. 2, n. 1.   In addition to monetary damages, Plaintiff seeks a "declaratory judgment declaring that Defendants' conduct violated Plaintiff's constitutional rights" as well as "injunctive relief enjoining Defendants from engaging in any further violation of Plaintiff's constitutional rights.[1]"  Dkt #1, pp. 22, 24, 26-29.  Given that Plaintiff is seeking to challenge the validity of Judge Noe's decision to grant Defendant Berryman's ex parte PPO vis-à-vis this lawsuit, several abstention doctrines bar the relief Plaintiff seeks in this lawsuit.

## A. The *Rooker-Feldman* Doctrine Bars Plaintiff's Claims Against Judge Noe.

The *Rooker–Feldman* doctrine is a judicially imposed limitation on subject matter jurisdiction that divests a federal court of jurisdiction over cases that raise claims inextricably intertwined with a state court final judgment. *Rooker v Fidelity Trust Co.,* 263 U.S. 413 (1923); *Dist. of Columbia Ct. of App. v Feldman*, 460 U.S. 462 (1983). A federal claim is inextricably intertwined with a state court judgment if "federal relief can only be predicated upon a conviction that the state court was wrong." *Pennzoil Co v Texaco, Inc.,* 481 U.S. 1, 25 (1987); *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003).   The *Rooker-Feldman*

---

[1] The injunctive relief Plaintiff seeks would clearly require a finding by this Court that Judge Noe's decision to grant the ex-parte PPO was unconstitutional in the first place.

doctrine prohibits a federal court from making what would effectively be an appellate review of a state court decision.  The doctrine has been applied even when there has been no final state court judgment.  See, *Keene Corp.v. Cass*, 908 F.2d 293 (8th Cir. 1990); *Hale v. Harney*, 786 F.2d 688 (5th Cir. 1986); *Worldwide Church of God v. McNair*, 805 F.2d 888 (9th Cir. 1986).  This doctrine is concerned with finality and ensuring that litigants do not take multiple bites from the apple.  It has the effect of both claim and issue preclusion.

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the plaintiffs challenged the validity of a rule which prevented them from sitting for the state bar examination.  Plaintiffs sought waivers from the American Bar Association Standards, which were denied by the Bar. Thereafter, plaintiffs filed suit in state court from the denial.  After considering the matter, the state court issued orders denying the petitions for waivers.  Plaintiffs then filed suit in the United States District Court, challenging both the denial of the waivers, and asserting certain constitutional violations.  In refusing to exercise jurisdiction over the claims, the court held that the Federal District Court was barred from reviewing claims which were raised in State Court, as well as those that were not raised, but were "inextricably intertwined" with the raised claims, so long as there was a fair opportunity to raise the intertwined claims in state court. *See, also, Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923). The U.S. Supreme Court noted the

competence of state courts to adjudicate federal constitutional claims and expressed the desirability that the state court be given the first opportunity to consider the issues in light of federal constitutional arguments. *See, also, Allen v. McCurry*, 449 U.S. 90, 105 (1980).

Here, no matter how Plaintiff attempts to couch the claims asserted in this federal litigation, the central theme of both this lawsuit and the pending state court appeal is whether the PPO sought against him by Defendant Berryman was properly granted. The nature of Plaintiff's claims and extent to which they are thoroughly entangled with the state court appeal preclude review of his allegations in this case. Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and should be dismissed accordingly.

### B. The *Younger* Doctrine Precludes Plaintiff's Claims Against Judge Noe.

In *Younger v. Harris*, the Supreme Court established a doctrine of abstention based on comity and the principle that state courts should be free to perform their functions without interference from the federal courts. 401 U.S. 37 (1971). Where *Younger* abstention applies, a federal district court must either stay or dismiss the action pending resolution of state court proceedings that involve issues similar to those presented in the federal action. *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). In this instance, dismissal is warranted. *See Cole v Granville*, 448 F 3d 853 (6th Cir, 2006); *Goode v Muhammad*, No. 18-

10314 2018 WL 705153 (E.D. Mich. 2018) (Ex. Q).

"Three requirements have evolved for proper invocation of the *Younger* doctrine: (1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Refining & Marketing Company v. Brennan*, 921 F.2d 635, 639 (6th Cir.1990); *Younger v. Harris*, 401 U.S. 37, 44 (1971); *Juidice v. Vail*, 430 U.S. 327, 337 (1977); *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001). Here, all three factors weigh in favor of abstention. First, there is a currently a case regarding the propriety of the PPO in question pending in the Michigan Court of Appeals. Second, there is no question that the determination of whether a PPO was properly granted is an important state interest. Third, "a federal court must presume that the state courts are able to protect the interests of a federal plaintiff." *Goode,* 2018 WL 705153, at *2 (citing *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995)). Certainly, if the PPO was improperly granted and maintained, the Michigan Court of Appeals has the ability to correct any errors by the lower court judges through appellate review.

Further, in *Younger*, as the Sixth Circuit has reiterated, the Supreme Court held "that a federal court should not interfere with a pending state criminal proceeding except in the rare situation where an injunction is necessary to prevent great and

immediate irreparable injury." *Fieger v. Thomas*, 74 F.3d 740, 743 (6th Cir.1996). Here, there is no threat of "great and immediate irreparable injury." Plaintiff does not have any other matters currently before Judge Noe nor is he likely to ever have another matter before her, given her early January 2019 retirement. This Court should allow the state appellate court to make a determination regarding whether the PPO in question is proper, and dismiss Plaintiff's federal claims against Judge Noe, which pertain solely to the issuance of that PPO.

## IV.    THE EX PARTE PPO IN THIS MATTER WAS PROPERLY GRANTED BY JUDGE NOE.

Judge Noe granted Defendant Berryman's ex parte PPO based on the Petition itself and the supporting documentation he provided. (Ex. F – PPO Petition; Ex. G – Order Granting Ex Parte PPO). There was nothing improper about Judge Noe granting the ex parte PPO without a hearing, as Plaintiff alleges. By definition, an ex parte PPO is a "restraining order granted without notice" and restrains a respondent from committing certain acts. MCL 600.2950(30). *Pickering v. Pickering*, 253 Mich. App. 694, 698 (2002). There is nothing unusual about a Judge granting an ex parte PPO where, as here, she is satisfied that "immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice" or "the notice will itself precipitate adverse action before a personal protection order can be issued." MCL 600. 2950a(12); Ex. G – Order Granting Ex Parte PPO.

20

Plaintiff's recourse for challenging an ex parte PPO that he believes was improperly granted is to file a Motion to Set Aside the ex parte PPO, which Plaintiff did in this case.  (Ex. H – Noe PPO Hearing).  Because Plaintiff requested Judge Noe to recuse herself at his Motion Hearing, the case was transferred to Washtenaw County Circuit Court Judge Patrick Conlin, Jr.  (Ex. I – Notice of Hearing).  After three days of testimony, Judge Conlin upheld the PPO, with minor modification, ruling that Plaintiff's conduct during the June 19, 2017 Commission meeting "was something that a reasonable person could feel threatened by."  (Ex. K – Conlin PPO Hrg, pp. 90-91).  With that conduct as the backdrop, Judge Conlin also found that Plaintiff's July 3rd email with accusations against Defendant Berryman, followed by his July 18th email, "would continue or perpetuate Mayor Berryman's concern about personal matters being transcended from the political stage" and "was behavior that Mr. Berryman could have felt threatened by. . . ." *Id.* at 90-91.  Consequently, Judge Conlin found that Mr. Berryman has a legitimate cause for concern" and maintained the PPO.  *Id.* at 92.  Given that the PPO was not dissolved after consideration by Judge Conlin, Plaintiff cannot establish that there was anything improper about Judge Noe granting Defendant Berryman's the ex parte PPO against him.  This defeats each claim that he has raised against the Judge in this litigation and suit must be dismissed as a matter of law.

**V.    PLAINTIFF'S STATE LAW CLAIMS AGAINST JUDGE NOE ARE BARRED BY ABSOLUTE JUDICIAL IMMUNITY.**

Plaintiff additionally raises state law claims of Abuse of Process, Conspiracy and Intentional Infliction of Emotional Distress against Judge Noe.[2]  These claims are also barred by absolute judicial immunity afforded under Michigan law.  It is well-established that "judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their respective judicial, legislative, and executive authority" pursuant to MCL 691.1407(5). *Spruytte v. Owens*, 190 Mich. App. 127, 130 (1991)(citing *Ross v. Consumers Power Co.* (On Rehearing), 420 Mich. 567, 592 (1984)). This broad grant of absolute immunity to judges is based on the belief that public employees who are delegated policy-making powers should not be intimidated by the threat of personal liability or distracted by civil litigation from the vigorous discharge of their public duties. *Ross*, 420 Mich. at 632.

Further, **"[i]t is well settled that judges are accorded absolute immunity from liability for acts performed in the exercise of their judicial functions."** *Diehl v. Danuloff*, 242 Mich. App. 120, 128 (2000). As the Michigan Court of Appeals noted in *Serven v. Health Quest Chiropractic, Inc.*, 319 Mich. 245, 253 (2017):

---

[2] These claims also fail on the merits, which will be set forth more thoroughly if Defendant Noe's initial Motion for Summary Judgment is denied.

**The purpose of absolute immunity is to "protect[ ] the finality of judgments and preserv[e] the judicial independence by 'insulating judges from vexatious actions prosecuted by disgruntled litigants.'"** *Id.,* quoting *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). **"[T]he broad scope of the immunity ... is 'for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'"** *Diehl,* 242 Mich.App. at 129, quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (quotation marks and citations omitted). Accordingly, **judges "are not liable to civil actions for their judicial acts even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."** *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871). **Absolute immunity is necessary because "controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree" and could cascade into a never-ending river of actions in other forums**. *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). And **"safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct."** *Id*.

As described more thoroughly above, the claims in Plaintiff's Complaint are based upon the contention that Judge Noe improperly granted an ex parte PPO against him. The granting of a PPO is undoubtedly within the scope of Judge Noe's judicial authority. Consequently, she is entitled to absolute judicial immunity under MCL 691.1407(5) and the Michigan case law interpreting the scope of absolute judicial immunity. Further, the Michigan Court of Appeals has expressly held that absolute judicial immunity bars claims for injunctive relief. *McCarthy v. Sosnick*, No. 293482, 2011 WL 4424344, at *6 (Mich. Ct. App. Sept. 22, 2011)("[t]he trial court properly rejected plaintiff's claim that injunctive relief

and attorney fees were available remedies against defendant Sosnick")(Ex. R). Plaintiff's state law tort claims against Judge Noe must be dismissed as a matter of law.

## **RELIEF REQUESTED**

WHEREFORE, Defendant Noe respectfully requests that this Court grant her Motion for Summary Judgment and dismiss all of the claims against her, in their entirety, with prejudice, and grant sanctions against Plaintiff and/or his attorneys for filing this frivolous action, as well as costs and attorney fees so wrongfully incurred in defending this action and any other relief the Court deems appropriate.

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/ Holly S. Battersby_____
Attorney for Defendant Noe
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
hbattersby@rsjalaw.com
(P72023)

DATED: December 13, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record; and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: [none].

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/ Holly S. Battersby_____
Attorney for Defendant Noe
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
hbattersby@rsjalaw.com
(P72023)