# EXHIBIT C

Calendar No. 547

| 104TH CONGRESS 2d Session | SENATE | REPORT 104-366 |
|---|---|---|

# FEDERAL COURTS IMPROVEMENT ACT OF 1996—S. 1887

SEPTEMBER 9, 1996.—Ordered to be printed

Mr. HATCH, from the Committee on the Judiciary, submitted the following

# REPORT

together with

## ADDITIONAL VIEWS

[To accompany S. 1887]

The Committee on the Judiciary, to which was referred the bill (S. 1887) to make improvements in the operation and administration of the Federal courts, and for other purposes, having considered the same, reports favorably thereon with amendments and recommends that the bill, as amended, do pass.

CONTENTS

|  | Page |
|---|---|
| I. Purpose | 23 |
| II. Legislative history | 24 |
| III. Votes of the committee | 24 |
| IV. Section-by-section analysis | 25 |
| V. Regulatory impact statement | 45 |
| VI. Cost estimate | 45 |
| VII. Additional views of Mr. Grassley | 52 |
| VIII. Additional views of Mr. Kohl | 54 |
| IX. Changes in existing law | 58 |

The bill, as amended follows:

> Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Federal Courts Improvement Act of 1996".

29-010

2

(b) TABLE OF CONTENTS.—The table of contents of this Act is as follows:

Sec. 1. Short title; table of contents.

TITLE I—CRIMINAL LAW AND CRIMINAL JUSTICE AMENDMENTS

Sec. 101. New authority for probation and pretrial services officers.
Sec. 102. Tort Claims Act amendments relating to liability of Federal public defenders.

TITLE II—JUDICIAL PROCESS IMPROVEMENTS

Sec. 201. Duties of magistrate judge on emergency assignment.
Sec. 202. Consent to trial in certain criminal actions.
Sec. 203. Venue in civil actions.
Sec. 204. Registration of judgments for enforcement in other districts.
Sec. 205. Vacancy in clerk position; absence of clerk.
Sec. 206. Diversity jurisdiction.
Sec. 207. Bankruptcy Administrator Program.
Sec. 208. Removal of cases against the United States and Federal officers or agencies.
Sec. 209. Appeal route in civil cases decided by magistrate judges with consent.
Sec. 210. Reports by judicial councils relating to misconduct and disability orders.
Sec. 211. Protective orders; sealing of cases; disclosure of information.

TITLE III—JUDICIARY PERSONNEL ADMINISTRATION, BENEFITS, AND PROTECTIONS

Sec. 301. Senior judge certification.
Sec. 302. Refund of contribution for deceased deferred annuitant under the Judicial Survivors' Annuities System.
Sec. 303. Judicial administrative officials retirement matters.
Sec. 304. Bankruptcy judges reappointment procedure.
Sec. 305. Carrying of firearms.
Sec. 306. Technical correction related to commencement date of temporary judgeships.
Sec. 307. Full-time status of court reporters.
Sec. 308. Court interpreters.
Sec. 309. Technical amendment related to commencement date of temporary bankruptcy judgeships.
Sec. 310. Contribution rate for senior judges under the judicial survivors' annuities system.
Sec. 311. Prohibition against awards of costs, including attorneys fees, and injunctive relief against a judicial officer.

TITLE IV—JUDICIAL FINANCIAL ADMINISTRATION

Sec. 401. Increase in civil action filing fee.
Sec. 402. Interpreter performance examination fees.
Sec. 403. Judicial panel on multidistrict litigation.
Sec. 404. Disposition of fees.

TITLE V—FEDERAL COURTS STUDY COMMITTEE RECOMMENDATIONS

Sec. 501. Parties' consent to bankruptcy judge's findings and conclusions of law.
Sec. 502. Qualification of Chief Judge of Court of International Trade.
Sec. 503. Judicial cost-of-living adjustments.

TITLE VI—MISCELLANEOUS

Sec. 601. Participation in judicial governance activities by district, senior, and magistrate judges.
Sec. 602. The Director and Deputy Director of the administrative office as officers of the United States.
Sec. 603. Removal of action from State court.
Sec. 604. Federal judicial center employee retirement provisions.
Sec. 605. Abolition of the special court, Regional Rail Reorganization Act of 1973.

36

judgeship for a minimum of 5 years. However, the language of section 3(b) of the 1992 act followed language used for article III judges, which provided that a vacancy occurring 5 years or more after the date of the enactment of the act shall not be filled.

By linking the temporary judgeship terms (5 years) to the enactment date of a particular judgeship act, a district could lose most or all of the benefit of an authorized temporary judgeship position. The period between the effective date of a particular judgeship act and the time new judges actually take office to fill newly created positions is often years, due to delays in funding and selection processes.

The article III judiciary has had temporary judgeships for years and has struggled with the harsh effects of linking the 5-year period to the date of enactment of the particular judgeship act. Congress recognized this problem and passed legislation to amend the commencement date of certain temporary article III judgeships in Public Law 104-60.

*Sec. 310.—Contribution rate for senior judges under the Judicial Survivors' Annuities System*

This section corrects an anomaly between categories of disabled judges and their rate of contribution to the Judicial Survivors' Annuities System (JSAS) and provides equal treatment for all disabled judges. Currently, a senior judge who is disabled and retires under 28 U.S.C. 371(b) (senior status) contributes to the JSAS at a rate of 2.2 percent. However, a disabled judge who retires under 28 U.S.C. 372(a) (permanent disability) contributes to JSAS at a rate of 3.5 percent unless he or she is "willing and able" to work. This section applies a 2.2-percent contribution rate to all senior article III judges and all retired judges of the U.S. Court of Federal Claims.

*Sec. 311.—Prohibition of awards of costs, including attorney's fees, and injunctive relief against judicial officers*

This section restores the doctrine of judicial immunity to the status it occupied prior to the Supreme Court's decision in *Pulliam* v. *Allen*, 466 U.S. 522 (1984), and has the support of the American Judges Association, the Conference of Chief Judges of the National Center for State Courts, and the American Bar Association. Legislation identical to section 311 was introduced as S. 1115 by Senator Thurmond in this Congress on August 3, 1995. Nearly identical bills were also introduced, and the subject of hearings in previous years, including the 100th, the 101st and the 102d Congresses. While the Committee favorably reported these bills in each of three Congresses, the full Senate never considered them. See S. Rept. 556, 100th Cong., 2d sess. (1988); S. Rept. 465, 101st Cong., 2d sess. (1990); S. Rept. 224, 102d Cong., 1st sess. (1991).

In *Pulliam,* the Supreme Court broke with 400 years of common-law tradition and weakened judicial immunity protections. The case concerned a State magistrate who jailed an individual for failing to post bond for an offense which could be punished only by a fine and not incarceration. The defendant filed an action under 42 U.S.C. 1983, obtaining both an injunction against the magistrate's practice of requiring bonds for nonincarcerable offenses, and an

37

award of costs, including attorney's fees. The Supreme Court affirmed, expressly holding that judicial immunity is not a bar to injunctive relief in section 1983 actions against a State judge acting in a judicial capacity, or to the award of attorney's fees under the Civil Rights Attorney Fees Award Act, 42 U.S.C. 1988. Those statutes are now amended to preclude awards of costs and attorney's fees against judges for acts taken in their judicial capacity, and to bar injunctive relief unless declaratory relief is inadequate.

In the 12 years since *Pulliam*, thousands of Federal cases have been filed against judges and magistrates. The overwhelming majority of these cases lack merit and are ultimately dismissed. The record from the Committee's previous hearings on this issue is replete with examples of judges having to defend themselves against frivolous cases. Even when cases are routinely dismissed, the very process of defending against those actions is vexatious and subjects judges to undue expense. More importantly, the risk to judges of burdensome litigation creates a chilling effect that threatens judicial independence and may impair the day-to-day decisions of the judiciary in close or controversial cases.

Subsection 311(a) codifies the general prohibition against holding judicial officers (justices, judges and magistrates) liable for costs, including attorney's fees, for acts or omissions taken in their judicial capacity. Subsection 311(b) amends 42 U.S.C. 1988 to prohibit holding judicial officers liable for costs or fees. Subsection 311(c) amends 42 U.S.C. 1983 to bar a Federal judge from granting injunctive relief against a State judge, unless declaratory relief is unavailable or the State judge violated a declaratory decree. In short, subsection (a) states the general rule, while subsections (b) and (c) specifically address the statutes at issue in *Pulliam*. The legislation extends protection to Federal as well as State judicial officers out of concern that Federal judges otherwise might be subject to cost and fee awards in cases alleging Federal constitutional torts. See, e.g., *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1977); *Butz v. Economu*, 438 U.S. 478 (1978).

This section does not provide absolute immunity for judicial officers. Immunity is not granted for any conduct "clearly in excess" of a judge's jurisdiction, even if the act is taken in a judicial capacity. Moreover, litigants may still seek declaratory relief, and may obtain injunctive relief if a declaratory decree is violated or is otherwise unavailable. Section 311 restores the full scope of judicial immunity lost in *Pulliam* and will go far in eliminating frivolous and harassing lawsuits which threaten the independence and objective decision-making essential to the judicial process.

TITLE IV—JUDICIAL FINANCIAL ADMINISTRATION

*Sec. 401.—Increase in civil action filing fee*

In September 1992, the Judicial Conference, noting that civil filing fees had been increased from $15 to $60 in 1978 and from $60 to $120 in 1986, recommended that 28 U.S.C. 1914(a) be amended to increase the civil filing fee from $120 to $150.

This section increases the filing fee for civil actions in the district courts under 28 U.S.C. 1914 from $120 to $150. This modest ad-