UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDELL SHANE MACKEY,

    Plaintiff,                                   Civil Action No. 17-CV-12359

vs.                                              HON. BERNARD A. FRIEDMAN

JAMES BERRYMAN and
MARGARET NOE,

    Defendants.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT NOE'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 41]. Plaintiff has filed a response in opposition. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide the motion without a hearing.

*Background*

This action challenges an ex parte personal protection order ("PPO") issued by defendant Lenawee County Circuit Judge Margaret Noe ("Judge Noe") against plaintiff Wendell Shayne Mackey ("Mackey"). When Mackey commenced the instant action, he was running for city commissioner of Adrian, Michigan, and defendant James Berryman ("Berryman") was the mayor of Adrian. Compl. ¶¶ 8-9. Mackey's and Berryman's history dates back to 1986, when Mackey broke into and stole from Berryman's flower shop, which resulted in Mackey being convicted and sent to prison. *Id.* ¶¶ 28, 30; Def.'s Exs. A-F.

Mackey describes himself as Berryman's "political adversary" and "vocal critic." Compl. ¶ 3. In 2017 Mackey expressed his criticism of local officials – in particular, Berryman – by publishing articles online, writing letters to the local newspaper's editor, speaking out at city

commission meetings, and sending emails to the city attorney. *Id.* ¶¶ 11, 18, 23-24, 27, 30-31, 46-48. When Mackey was speaking during the public comment portion of a city commission meeting on June 19, 2017, Berryman asked whether he was the same Mackey who had broken into his flower shop years earlier. Def.'s Ex. D at 0:58-1:05. In his response, Mackey called Berryman a "corrupt, dirty, crooked politician" and said he was going to be "a thorn in [Berryman's] side" and was "not going away." *Id.* at 2:00-2:10. Mackey also stated that Berryman had conspired with a judge to put him in prison for the flower shop theft. *Id.* at 1:08-1:14. A police report by Adrian Police Chief Vince Emerick documents this "heated exchange" and identifies Berryman as the victim of "Stalking (Misdemeanor)" and Mackey as the suspect/offender. Def.'s Ex. E at 2. The report includes the following comments by Chief Emerick:

> After the meeting Mayor Berryman asked me to record the exchange in a report as he intended to apply for a personal protection order. While no direct threats were made, Mayor Berryman indicated he felt threatened by the looks and gesturing of Mackey as well as his behavior prior to the commission meeting. Previous behavior included letters written to the newspaper and postings made online.

*Id.* at 2-3.

At a city commission meeting on July 3, 2017, Mackey voiced his concern that city employees had been denied the right to be heard at the June 19 meeting due to Berryman's "violations of fundamental parliamentary procedure." Compl. ¶¶ 44-48. Berryman "became visibly upset" and disputed Mackey's accusation. *Id.* ¶ 49. Two days later, Mackey emailed the city attorney – copying every city commissioner, including Berryman – about the July meeting, "reveal[ing] . . . Berryman's lack of knowledge regarding fundamental tenents [sic] of parliamentary procedure." *Id.* ¶¶ 52-54; *id.* Ex. O.

On July 6, 2017, Berryman filed a petition in Lenawee County Circuit Court for a PPO against Mackey. *Id.* ¶ 56; Def.'s Ex. F. Berryman indicated in the petition that he sought the

2

PPO because of Mackey's July 5 email to the city attorney, along with the following reasons: Mackey's conviction involving Berryman's flower shop; Mackey's May 20, 2017, letter to the local newspaper's editor containing "accusations of fraud, corruption [and] kickbacks, etc."; Mackey "rant[ing]" at the June 19 city commission meeting "that [Berryman] was at fault for [Mackey's] incarceration – such that [Berryman] filed a police report"; Berryman's belief that "Mackey clearly blames me for his incarceration in 1986 [and] carries those misguided feelings to this date"; Mackey posting "false accusations on social media" against Berryman and Berryman's friends "using their pictures [and] copies of their signatures without their permission"; and Mackey's "use of social media [and] emails [and] public encounters . . . escalating in frequency and [being] hostile in tone." Compl. ¶ 57; Def.'s Ex. F PageID 1630, 1632. Berryman further indicated that he sought an ex parte PPO "because immediate and irreparable injury, loss, or damage will occur between now and a hearing or because notice itself will cause irreparable injury, loss, or damage before the order can be entered." Def.'s Ex. F PageID 1630. Attached to the petition were documents related to the flower shop incident and Mackey's criminal history, as well as a few of Mackey's writings, such as the July 5 email. *Id.* PageID 1639-48.

On July 7, 2017, Judge Noe granted Berryman's request for a PPO because of "[e]scalating antagonistic aggression against Petitioner; criminal history (Petitioner – victim)[;] use of media to harass Petitioner." Def.'s Ex. G PageID 1651. She issued the PPO ex parte "because irreparable injury, loss, or damage will result from delay required to give notice or notice itself will precipitate adverse action before an order can be issued." Compl. ¶ 60; Def.'s Ex. G PageID 1651. The PPO prohibited Mackey from "stalking"[1] and "posting a message through the

---

[1] The PPO prohibited Mackey from "stalking as defined under MCL 750.411h and MCL 750.411i," which included "following the petitioner"; "appearing at the workplace or the residence of the petitioner"; "approaching or confronting the petitioner in a public place or on private

3

use of any medium of communication, including the Internet or a computer or any electronic medium, pursuant to MCL 750.411s." Def.'s Ex. G PageID 1651. Mackey alleges that Judge Noe, "a contributor to Democratic candidates, knew or reasonably should have known that there was no basis in law that could support issuing a [PPO] *ex parte* on behalf of Defendant Berryman, a Democratic candidate, against Plaintiff for wholly political activity that lies at the core of the First Amendment." Compl. ¶ 69. Mackey also alleges that Judge Noe issued the PPO ex parte "in an effort to silence [his] criticism of Defendant Berryman and to provide Defendant Berryman a competitive advantage in the local election." *Id.* ¶ 70.

Mackey filed a motion to set aside the PPO, and at a hearing on this motion on July 26, 2017, Judge Noe granted Mackey's request that she recuse herself because in the interim the instant action had been filed against her in this Court. Def.'s Ex. H. at 9-10, 14. The case was reassigned to Washtenaw County Circuit Judge Patrick Conlin, Jr., who after conducting a three-day hearing on the matter, ruled on October 10, 2017, that there was "cause to maintain the [PPO]" but made certain modifications to it to allow Mackey to campaign. Def.'s Exs. I, K at 90, 92-97. On October 31, 2017, Mackey appealed Judge Conlin's ruling to the Michigan Court of Appeals, where the matter remains pending. Def.'s Br. at 6; Def.'s Ex. L.

In the complaint, Mackey asserts federal and state law claims against Berryman and Judge Noe. Counts I-IV are brought under 42 U.S.C. § 1983. In Count I, Mackey alleges that defendants retaliated against him in violation of his First Amendment rights. Compl. ¶¶ 89-94. In Counts II and III, Mackey alleges that defendants deprived him of procedural and substantive due

---

property"; "entering onto or remaining on property owned, leased, or occupied by the petitioner"; "sending mail or other communications to the petitioner"; "contacting the petitioner by telephone"; "placing an object on or delivering an object to property owned, leased, or occupied by the petitioner"; "threatening to kill or physically injure petitioner"; and "purchasing or possessing a firearm." Def.'s Ex. G PageID 1651.

process under the Fourteenth Amendment. *Id.* ¶¶ 95-110. In Count IV, Mackey alleges that defendants violated his equal protection rights under the Fourteenth Amendment. *Id.* ¶¶ 111-16. Count V, which is brought under 42 U.S.C. § 1985, is a conspiracy claim against defendants. *Id.* ¶¶ 117-121. In Counts VI-VIII, Mackey asserts the following state law claims against defendants: abuse of process, civil conspiracy, and intentional infliction of emotional distress. *Id.* ¶¶ 122-132. For each of these eight counts Mackey requests a declaratory judgment, damages, and injunctive relief to prevent defendants from further violating his constitutional rights. *Id.* at 22, 24-29.

Judge Noe seeks summary judgment. She argues that "[t]here is no question that she is entitled to absolute judicial immunity from all of Plaintiff's claims against her, which stem solely from her decision to grant the ex parte PPO." Def.'s Br. at 9. Having considered the parties' briefs and the applicable law, the Court concludes that Judge Noe has absolute judicial immunity and therefore grants summary judgment in her favor.

*Summary Judgment Standard*

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See id.* at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-

moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

*Discussion*

**Counts I-V – Federal Claims**

Judge Noe has absolute judicial immunity as to Mackey's federal claims. "The Supreme Court has specifically held that state judges are absolutely immune from liability under 42 U.S.C. § 1983." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (citing *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983), and *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967)). Relying on Supreme Court precedent, the Sixth Circuit has stated that

> [i]t is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir.1994) (A judge performing his judicial functions is entitled to immunity from a suit seeking monetary damages.).
>
> ***
>
> In fact, judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice . . . . *Pierson*, 386 U.S. at 554, 87 S.Ct. 1213; *see also Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). However, judicial immunity does not apply if the judge's activities were "non-judicial" in nature or if the judge's actions are performed without any jurisdiction to do so. *Id.*; *Stump v. Sparkman*, 435 U.S. 349, 362–63, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

*Id.*

As to whether a judge is performing a judicial act, this Court has noted that

> [t]he Supreme Court has "made clear that whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."

6

> *Mireles*, 502 U.S. at 12 (quoting *Stump*, 435 U.S. at 362) (internal quotation marks and citation omitted). In other words, courts "look to the particular act's relation to a general function normally performed by a judge." *Id.* at 13.

*King v. McCree*, No. 13-10567, 2013 WL 3878739, at *4 (E.D. Mich. July 26, 2013), *aff'd*, 573 F. App'x 430 (6th Cir. 2014). "Grave procedural errors, including those involving due process, do not deprive an act of its essentially judicial nature." *Robertson v. City of Grand Rapids*, No. 1:06-CV-451, 2008 WL 2224173, at *5 (W.D. Mich. May 27, 2008) (citing *Stump*, 435 U.S. at 359, and *Stern v. Mascio*, 262 F.3d 600, 606-08 (6th Cir. 2001)).

As to whether a judge is acting "without any jurisdiction to do so," this Court has noted that

> [f]or th[is] exception to apply, a judge must have acted "in the clear absence of all jurisdiction," as opposed to merely "in excess of authority." *Tunis*, 113 F.3d at 1441. "A judge acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides." *Johnson v. Turner*, 125 F.3d 324, 334 (6th Cir.1997).

*Rice v. Wayne Cty. Treasurer*, No. 13-CV-12456, 2013 WL 5913685, at *8 (E.D. Mich. Nov. 1, 2013).

"Absolute judicial immunity . . . refers to protection from suit and not simply the assessment of liability." *Bush v. Rauch*, 38 F.3d 842, 849 (6th Cir. 1994) (internal citation omitted). In a recent opinion, Judge Murphy of this Court wrote that

> [j]udges are entitled to absolute judicial immunity on claims for damages. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (per curiam) (judge performing judicial functions is absolutely immune from suit seeking monetary damages even if acting erroneously, corruptly, or in excess of jurisdiction); *Collyer v. Darling*, 98 F.3d 211, 221 (6th Cir. 1996). Moreover, the 1996 amendments to § 1983 extended absolute immunity for state judicial personnel to requests for injunctive or equitable relief. *See* 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief

is unavailable."); *see also Kipen v. Lawson*, 57 Fed.Appx. 691 (6th Cir. 2003) (discussing federal judges' immunity); *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 446–47 (E.D. Mich. 2006).

*Whittaker v. Geyer*, No. 2:18-CV-11472, 2018 WL 3839396, at *2 (E.D. Mich. Aug. 13, 2018).

Further, "[t]he reasons supporting absolute immunity in section 1983 cases apply with equal force to cases pursued under section 1985." *Hayes v. Hall*, 604 F. Supp. 1063, 1068 (W.D. Mich. 1985); *see also McCarthy v. Sosnick*, No. 293482, 2011 WL 4424344, at *6 (Mich. Ct. App. Sept. 22, 2011) ("[T]he doctrine of judicial immunity applicable to a 42 USC 1983 claim also applies to an action under 42 USC 1985.").

In the present case, Judge Noe has absolute judicial immunity on Mackey's federal claims against her because they arise out of her issuing a PPO, which is a classically judicial function. The exceptions to absolute judicial immunity do not apply; Judge Noe's granting of the PPO against Mackey was a judicial act,[2] and it was not done "in the clear absence of all jurisdiction."[3] *See Petty v. Beebe*, No. 16-CV-12061, 2016 WL 3230718, at *1-2 (E.D. Mich. June 13, 2016) (dismissing plaintiff's claims against Jackson County Circuit Judge Beebe that challenged her granting a PPO "because [Judge Beebe] cannot be sued for money damages or

---

[2] In granting the PPO, Judge Noe performed a function generally carried out by judges, and she interacted with the parties in a judicial capacity. "Even assuming, for the purpose of argument, that [it was] unjustified or erroneous, [her] act[] w[as] no less judicial." *Rice*, 2013 WL 5913685, at *8 (citing *Brookings*, 389 F.3d at 617, and *Stump*, 435 U.S. at 356-57).

[3] In Michigan, a state circuit court

> is a "trial court of general jurisdiction" and has "original jurisdiction in all matters not prohibited by law." *See* Mich. Const.1963, art. VI, §§ 1, 13; Mich. Comp. Laws § 600.601. Michigan law affirmatively invests the circuit court with original jurisdiction "to hear and determine all civil claims and remedies" . . . . *See* Mich. Comp. Laws § 600.605.

*Rice*, 2013 WL 5913685, at *8. As a result, Judge Noe did not perform an act "clearly outside the subject matter of the court over which [s]he presides." *Id.* (quoting *Johnson*, 125 F.3d at 334).

injunctive relief for her alleged actions. Judge Beebe's actions were judicial in character, and because she had jurisdiction over the subject matter, she is protected by absolute judicial immunity."). Moreover, Mackey is not entitled to injunctive relief because he does not assert that "a declaratory decree was violated or declaratory relief is unavailable."[4]

---

[4] In his response, Mackey argues that if Judge Noe's immunity argument has merit, "the proper remedy would not be to dismiss the matter but, rather, to provide Plaintiff an opportunity to amend his Complaint in order to specify that he is suing Defendant Noe solely for declaratory relief, and if such relief [is] unavailable, then for injunctive relief." Pl.'s Resp. Br. at 6. Mackey's request to amend the complaint is denied. This Court has established that

> [a]lthough Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires," leave may be denied on the basis of undue delay, bad faith by the moving party, . . . futility of the proposed new claim, or undue prejudice to the opposite party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir.1999); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir.1997). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir.2001).
>
> ***
>
> Where "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade*, 259 F.3d at 459. And courts will deny leave to amend where there is "some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986). An amendment to a complaint prejudices a party where the amendment will require that party to prepare an additional defense strategy and expend additional resources to defend against new claims. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir.1973).

*Martin v. Trott Law, P.C.*, 198 F. Supp. 3d 794, 813-14 (E.D. Mich. 2016) (alterations added).

Mackey's request to amend the complaint is not presented a proper motion. Even if it was, his request is untimely because he seeks to amend the complaint over one year after the original complaint was filed and after Judge Noe has filed a motion for summary judgment. The Sixth Circuit has found prejudice to exist where a motion seeking leave to amend is filed after a defendant has filed a motion for summary judgment. *See, e.g.*, *McCray v. Carter*, 571 F. App'x 392 (6th Cir. 2014) (affirming denial of leave to amend where the motion was filed when summary judgment motions were pending). A plaintiff's failure to justify the delay and to address the issue

Mackey argues that Judge Noe does not have absolute immunity because he seeks declaratory relief. Pl.'s Br. at 1-6. In making this argument, he relies on a line from the Sixth Circuit's opinion in *Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016), stating that "Section 1983 now implicitly recognizes that declaratory relief is available against judicial officers." But he disregards language from *Ward*, just two paragraphs further, which limits the availability of such relief as follows:

> Our holding that declaratory relief is available against state courts under § 1983 does not necessarily mean that such relief will be appropriate in every case. Limits on the judicial power of federal courts stemming from accepted abstention doctrines, *see Pulliam*, 466 U.S. at 539, 104 S.Ct. 1970, and *Belill v. Hummel*, 835 F.2d 877, 1987 WL 24114, at *4 (6th Cir.1987), and the *Rooker–Feldman* doctrine, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), may well counsel against granting relief in certain circumstances. Article III's case-or-controversy requirement, moreover, operates to ensure that declaratory relief is available only when a live controversy continues to exist. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

*Id.* at 468. In other words, "'determining whether the declaratory relief is available [under § 1983] . . . turns on whether the judge[ ]' can properly be named as a defendant" in light of abstention doctrines, the *Rooker-Feldman* doctrine, and the Article III mootness doctrine. *Cooper v. Rapp*, 702 F. App'x 328, 333 (6th Cir. 2017) (internal quotation omitted) (alterations in original).

In the present case, declaratory relief is not available because Judge Noe is not a proper defendant under the *Rooker-Feldman* doctrine. "Under the *Rooker-Feldman* doctrine, a

---

of prejudice to the defendant may also favor denying an untimely motion for leave to amend. *See Wade v. Knoxville Utils. Bd.*, 259 F.3d 452 (6th Cir. 2001) (affirming denial of leave to amend where the motion was filed after a summary judgment motion had been filed and where plaintiff failed to justify the lateness of his motion and to dispute the finding of prejudice to the defendant that would have resulted from granting leave to amend). Mackey provides no justification for the late timing of his request to amend, and he does not dispute that granting his request would prejudice Judge Noe. The Court therefore denies Mackey's request to amend the complaint.

party who lost in state court may not complain about the injuries caused by state-court judgments in a subsequent federal lawsuit." *Zindler v. Rogers*, No. 1:11-CV-770, 2011 WL 4346393, at *6 (W.D. Mich. Aug. 23, 2011), *report and recommendation adopted*, No. 1:11-CV-770, 2011 WL 4346390 (W.D. Mich. Sept. 15, 2011) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "'If the source of the injury [alleged in the federal complaint] is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury . . . then the plaintiff asserts an independent claim' that is not subject to the *Rooker-Feldman* bar." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018) (quoting *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012)).

The PPO issued by Judge Noe is the source of the injury in Mackey's federal complaint; Mackey argues that Judge Noe violated his constitutional rights by issuing the PPO improperly, without notice, without giving him an opportunity to be heard, out of political motivations, and in retaliation for his political activities and expression. Claims based on allegations of this nature are clearly barred under *Rooker-Feldman*. *See Zindler*, 2011 WL 4346393, at *6 (concluding that plaintiff's claim regarding a state court PPO, among others, was barred by the *Rooker-Feldman* doctrine "to the extent plaintiff is complaining about the unfairness of the process afforded to him in the state courts"); *see also Nicklay v. Eaton Cty. Circuit Court*, No. 1:08-CV-211, 2008 WL 2139613, at *2-3 (W.D. Mich. May 20, 2008) (determining that because the alleged source of plaintiff's federal injury was a PPO issued by a state court, the Court cannot exercise jurisdiction under *Rooker-Feldman* to hear plaintiff's claim and alleged injury). Mackey's claims against Judge Noe are therefore barred by the *Rooker-Feldman* doctrine. The Court has reviewed Mackey's arguments as to why he believes this doctrine does not apply and

11

finds them unpersuasive. Judge Noe cannot "properly be named as a defendant" under *Rooker-Feldman*, which means that declaratory relief against her is not available.

Because Judge Noe is protected by absolute judicial immunity from Mackey's federal claims, she is entitled to summary judgment on Counts I-V.

**<u>Counts VI-VIII – State Law Claims</u>**

Absolute judicial immunity also bars Mackey's state law claims of abuse of process, civil conspiracy, and intentional infliction of emotional distress. "Under MCL 691.1407(5), a judge is absolutely immune from tort liability when acting in the scope of his or her judicial authority." *McCarthy*, 2011 WL 4424344, at *4 (citing *Odom v. Wayne Cty.*, 482 Mich. 459, 479 (2008)); *see also Rice*, 2013 WL 5913685, at *9 n.3. Mackey's allegations as to Judge Noe relate entirely to her issuing the PPO, which as noted above, was done in the scope of her judicial authority. Judge Noe is therefore entitled to absolute judicial immunity under Mich. Comp. Laws § 691.1407(5) with respect to Mackey's claims of abuse of process (Count VI) and intentional infliction of emotional distress (Count VIII).

Because Mackey cannot assert his state tort claims against Judge Noe, he also cannot assert a civil conspiracy claim (Count VII) against her. "In Michigan, a claim for civil conspiracy requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670, 684 (E.D. Mich. 2015) (quoting *Specialized Pharmacy Servs., LLC v. Magnum Health & Rehab of Adrian, LLC*, No. 12-12785, 2013 WL 1431722, at *4 (E.D. Mich. April 9, 2013)). "Notably, a claim for civil conspiracy may not exist in the air; 'rather, it is necessary to prove a separate, actionable tort.'" *Id.* (quoting *Specialized Pharmacy Servs., LLC*, 2013 WL 1431722, at *4); *see also McCarthy*, 2011 WL

4424344, at *5 ("Because the trial court properly dismissed plaintiff's tort claims, plaintiff's conspiracy claim cannot succeed."). Mackey cannot prove a "separate, actionable tort" necessary for a civil conspiracy claim because, as discussed above, Judge Noe acted within the scope of her judicial authority.

Thus, summary judgment is granted for Judge Noe on Counts VI-VIII.

*Conclusion*

For the reasons stated above,

IT IS ORDERED that defendant Judge Noe's motion for summary judgment is granted.

Dated: January 15, 2019  
Detroit, Michigan

**s/Bernard A. Friedman**  
BERNARD A. FRIEDMAN  
SENIOR U.S. DISTRICT JUDGE